WRIGHT v. SOUTHERN RAILROAD CO.·

(November 27, 1900.)

1. *Railroads—Brakes and Couplers—Questions for Jury.*

   Whether a train was provided with proper appliances so as to. prevent a derailment, is a question for the jury.

2. *Railroads—Defective Machinery—Questions for Jury— Directing Verdict.*

   Whether there was defective machinery on a derailed freight train, was a question for the jury, and the Court should not have directed a verdict for defendant on the evidence of the. conductor.

3. *Negligence—Railroads—Personal   Injury—Burden   of Proof.*

   A derailment of a train raises a presumption of negligence on part of railroad company.

4. *Verdict—Directing Verdict—Questions for Jury.*

   The Court condemns the growing tendency to take causes from the jury, where disputed issues of fact are to be passed upon.

5. *Railroads—Appliances—Questions for Jury.*

   It is for the jury to say from their own common sense and knowledge acquired by experience, whether a train could have been stopped in time to prevent the disaster.

   FAIRCLOTH, C. J., and FURCHES, J., dissenting.

CIVIL ACTION by R. Lee Wright, Adm'r of Wilson. Williams, against the Southern Railroad Company, heard by *Judge E. W. Timberlake* and a jury, at February Term, 1900, of ROWAN Superior Court. From judgment for defendant, the plaintiff appealed.

127——15

*Lee S. Overman, R. Lee Wright,* and *A. C. Avery,* for plaintiff.

*A. H. Price,* for defendant.

CLARK, J.    The plaintiff's intestate was killed in a railroad wreck.    Sixty feet west of a cutting, at a curve, wheel prints on the cross-ties showed that a derailment had begun. Three hundred feet further on, according to one witness, and seven hundred to one thousand feet, according to another, the cars rolled down a high embankment, and the intestate, who was in the car next to the tender, was so injured that he died.    The freight train, on which he was the sole brakeman, was running 18 miles an hour, and down grade.    There were nine cars, besides caboose, engine, and tender.    Eight cars rolled down the embankment and became kindling wood. Four cars had air-brakes and Janney couplers; the others were old style.    The engine had air-brakes.    The conductor of the train, who was summoned for the plaintiff, expressed the opinion that there was a sufficient number of air-brakes to control the train.    The plaintiff asked the Court to charge: "The jury are the judges as to the distance within which the train might have been stopped, with such appliances as the law requires a railroad company to furnish, and it is the province of the jury to say in this case whether, if the defendant's train had been furnished with air-brakes and improved couplers, the train might have been stopped in time to prevent the derailment.    *Lloyd v. Railroad Co.,* 118 N. C., 1012, 1013."    This the Court refused to give, but charged the jury:    "All the evidence tending to show that the engine and four cars had air-brakes and Janney couplers, and that this number was sufficient to control a train of that size, you will not find defendant guilty of negligence in the second particular (*i. e.,* failure to have air brakes)."    This was

directing a verdict, and was error. It is true the plaintiff had gone "into the enemy's camp," and gotten a witness who testified to his opinion that the brakes on the engine and four cars were "sufficient to control" a train consisting of nine cars and a caboose, besides engine and tender; but, on the other hand, there should have been left to the jury the fact that it did not control the train, and that after the first truck left the track at the curve the train ran 300 to 1,000 feet before the eight cars rolled down the embankment. If the opinion of one witness, that having proper appliances on four cars out of nine was sufficient, governs, then the function of the Court, in holding that all cars must be so equipped, is evaded and set aside by the judgment of a railroad employe, and it is not for the railroad, and neither for this Court, nor the jury, to decide what appliances are necessary. Besides, the jury were deprived, by the Court's directing a verdict, of passing upon the question of fact whether these appliances were sufficient, when the accident itself showed that the train had not been under control. When this case was here (122 N. C., at page 959) the Court said: "If the defendant, by having proper appliances (air-brakes), could have avoided the injury, it is liable." Moreover, the jury had a right, as asked in the prayer, to exercise their own common sense, and to use the knowledge acquired by their observation and experience in every-day life, whether the train could have been stopped in time to prevent the disaster. *Deans v. Railroad Co.,* 107 N. C., 693, reiterated in *Lloyd v. Railroad Co.,* 118 N. C., 1013. The improved coupler not merely prevents injuries in coupling cars, but, as stated in the Official Report of the Interstate Commerce Commission, quoted in *Troxler v. Railroad Co.,* 124 N. C., at page 194, it makes the train solid, and, by doing away with the "slack" incident to the antiquated pin and link system, places the

train more completely and quickly under the control of the engineer. This is a matter of common knowledge and common observation, but, by the Judge directing the verdict, the jury were deprived of considering it.

The conductor testified that he inspected the train by merely walking round and looking under each car. Upon that testimony the Court directed the jury to find that there was no defective machinery, when it should have been left to the jury, under all the circumstances surrounding the derailment, to say what caused the disaster. They might have been convinced, notwithstanding such superficial examination, that there was some defect in the machinery which caused the truck to jump the track, or prevented the train thereafter from being stopped before, several hundred feet further on, it rolled down the embankment.

Further, if the train "could have been controlled" by the air-brakes on four cars and the engine, and, in fact, it was not so controlled, but rolled 300 to 1,000 feet after the first truck jumped the track, without being stopped (and no evidence of an attempt even to stop the train was shown), the jury might well have found either that the machinery was defective, or the train undermanned, so that the engineer did not get prompt notice. But the Judge deprived the jury of considering the defectiveness of the machinery, or insufficiency of appliances, or the undermanning of the train by restricting the jury to the sole question whether the killing of the intestate was caused by rotten cross-ties; yet there was uncontradicted evidence that the train "had only one brakeman that day; usually had two, and a flagman." The Court has heretofore had occasion to condemn the growing tendency to take causes from the jury, or limit their sphere, in damage cases. The right of trial by jury is guaranteed by the Constitution, and on all disputed issues of fact the courts

can not be too careful to refrain from invading the province of the constitutional "triors of the facts."

And, finally, the first prayer for instruction should have been given. While the mere fact that one has been injured while in a public conveyance does not raise a presumption of negligence in the carrier, it is otherwise when the injury results from something over which the carrier has control. 1 Shear. and R. Neg. (5th Ed.) sec. 59. Accordingly, when there is a collision, or a derailment, and in similar cases, there is a presumption of negligence. 2 Shear. and R. Neg., sec. 516, and numerous cases cited. Of course, this presumption extends to the occurrence, regardless of the party injured. The Court has held in *Kinney v. Railroad Co.,* 122 N. C., at page 964, where the plaintiff was an engineer injured in a collision: "If the doctrine of *res ipsa loquitur* ever applies, it should certainly do so in such a case." In a still later case (*Marcom v. Railroad Co.,* 126 N. C., 200), also by a unanimous court, it is held: "Where the derailment of the engine resulted in the death of the intestate, a fireman in the employ of the defendant company, a *prima facie* case of negligence is to be inferred, and the burden is thrown upon the defendant to disprove negligence on its part." It is true that a common carrier is not an insurer of the safety of an employe, neither does it insure the safety of a passenger; but when there is a collision, or a derailment, and in like cases, the presumption of negligence arises. It is a rule of evidence, which, in no wise, springs out of the contract for carriage, but which arises from the fact that such things do not ordinarily happen unless there is negligence on the part of the carrier, and therefore it arises equally, whether the injured party is a passenger, or an employe. The negligence of a fellow-servant is a defense in cases where the injury occurred prior to the "Fellow Servant

Act" (chapter 56, Priv. Laws 1897). But the rule of evidence—the presumption of negligence arising from a disaster of this nature—applies none the less in such cases.

Error.

FAIRCLOTH, C. J., and FURCHES, J., dissent.