STEWART v. RAILROAD CO.

(Filed March 28, 1905).

*Carrier—Collision—Presumption of Negligence—Contributory Negligence—Evidence—Province of Jury.*

1. Where an engineer was running an "extra" and had orders to pass No. 8 at Station V and notice that No. 66 was running late, but had no orders that he would pass No. 6 at V. He passed No. 8 at V, and asked if there were further orders, and the agent told him "no" and gave him a "clearance card." He then proceeded towards the next telegraph station and within two miles thereof collided with No. 6 and was killed; *Held,* in an action for damages, a judgment of nonsuit was erroneous—the cause should have been submitted to the jury to find what was the proximate negligence which caused the death.

2. Proof of a collision raises a presumption of negligence on the part of the carrier, and the burden is thrown upon it to disprove negligence on its part, and the case must go to the jury.

3. Chapter 33 of Laws of 1887 requires the defendant to both plead and to prove contributory negligence, and the Court cannot adjudge that a defense is fully proved nor can it hold that there is no evidence of negligence when proof of the collision raises a presumption of negligence, which presumption is itself evidence.

4. Where the evidence is conflicting upon any material point, or even where there is no conflict in the evidence, but more than one inference may be drawn from it, it is the province of the jury to find the facts and make the deductions.

5. It is culpable negligence in a carrier, when any employee or passenger loses his life or sustains injury in a "head-end" collision from the failure of the carrier to provide the "block system" which would prevent the possibility of that class of collisions. CLARK, C. J.

ACTION by Mary Stewart, administrator of S. T. Stewart, against Raleigh and Augusta Air Line Railroad Company and another, heard before *Judge B. F. Long* and a jury, at October Term, 1904, of the Superior Court of WAKE County. From a judgment of nonsuit, plaintiff appealed.

*Douglass & Simms* and *Busbee & Busbee,* for the plaintiff.
*Day & Bell, T. B. Womack* and *Murray Allen,* for the defendant.

CLARK, C. J. This is an action for damages for negligently killing plaintiff's intestate, S. T. Stewart, a locomotive engineer in defendant's service. On 23 June, 1903, he was ordered to take engine No. 200 and tender and run "extra" from Raleigh to Hamlet, on the main line, over probably the busiest part of the system. Not running on any schedule he was necessarily subject in his movements to telegraphic orders. He had such telegraphic orders to pass the regular freight, No. 8, at Vass and notice that regular passenger train No. 66 was running forty minutes late, but no order that he would pass No. 6 at Vass. At Vass he passed regular freight No. 8. He then went into the telegraph office and asked if there were further orders, but the agent told him no and gave him a "clearance card." He accordingly proceeded towards Southern Pines, the next telegraphic station, and within two miles of that station he collided with train No. 6 and, with three other men, was killed. There were three stations between Vass and Southern Pines, a distance of eight miles, but no telegraphic office was maintained at either of these, though one had been formerly.

Upon this evidence his Honor intimated that upon all the evidence the plaintiff could not recover, whereupon the plaintiff submitted to a nonsuit and appealed.

The intimation of the Court was erroneous. This cause should have been submitted to the jury, who alone are empowered to find what was the proximate negligence which caused the death.

This case, arising out of a collision, is one of those in which the law raises a presumption of negligence on the part of the carrier. *Wright v. Railroad,* 127 N. C., 229; *Marcom v. Railroad,* 126 N. C., 200; *Kinney v. Railroad,* 122 N. C., 961; *Grant v. Railroad,* 108 N. C., 470; 2 S. & R. Neg., sec. 516, and numerous cases cited. In *Wright's case* it is said: "It is true that a common carrier is not an insurer of the safety of an employee, neither does it insure the safety of a passenger; but when there is a collision or a derailment, and in like cases, the presumption of negligence arises. It is a rule of evidence, which in nowise springs out of the contract for carriage, but which arises from the fact that such things do not ordinarily happen unless there is negligence on the part of the *carrier,* and therefore it arises equally whether the injured party is a passenger or an employee." In *Marcom's case* it is said: "Where the derailment of the engine resulted in the death of the intestate, a fireman in the employ of the defendant company, a *prima facie* case of negligence is to be inferred and the burden is thrown upon the defendant to *disprove* negligence on its part." In *Kinney's case,* which was a case of collision, the Court says: "If the doctrine of *res ipsa loquitur* ever applies, it would certainly do so in such a case. * * * This was particularly a case for the jury."

"Where the Court is asked to withdraw the case, or one or more questions of fact involved, from the jury, it is not the province of the Court to weigh the evidence and determine

137——44

what are the proper inferences to be drawn therefrom, but the only question is whether there is any testimony tending to establish the fact or facts against which the Court is asked as a matter of law to find." 23 Am. & Eng. Enc. (2 Ed.), 561. The rule as announced in *Russell v. Railroad,* 118 N. C., 1098, and ever since followed, is that "where the testimony is conflicting upon any material point, or more than one inference may be drawn from it, it is the province of the jury to find the facts and make the deductions." Here, the facts were in dispute and the inferences to be drawn from them.

If there were facts consistent with the absence of negligence on the part of the defendant, still there would be a conflict with the *presumption* of negligence on the part of the defendant arising from the fact of collision, which presumption is itself evidence. "A presumption of law * * * is evidence. In all systems of law, legal presumptions are treated as evidence. The presumption * * * is one of the instruments of proof." *Coffin v. U. S.,* 156 U. S., 459, 460. "The burden is thrown upon the defendant to disprove negligence on its part," *Marcom v. Railroad, supra,* and show that the injury was due to the negligence of the plaintiff's intestate—a question for the jury.

"Even when there is no conflict in the evidence or when the facts are not disputed, if different minds might honestly draw different conclusions from the evidence or from the undisputed facts, a question of fact is presented which should be left to the jury for its determination." 23 A. & E. Enc. (2 Ed.), 565, citing a vast number of cases, many of them from this Court.

The statute (1887, chap. 33) requires the defendant to both plead and to prove contributory negligence, and there being a presumption of negligence in the defendant, the case must go to the jury. "It was error to put upon the plaintiff

the burden of proving that her intestate was not negligent." *Peoples v. Railroad,* 137 N. C., 96; *Fulp v. Railroad,* 120 N. C., 525. The Court cannot adjudge that a defense is fully proved, nor can it hold that there is no evidence of negligence when proof of the collision raises a presumption of negligence.

Besides, there was this evidence, besides other, tending to show negligence, independent of the presumption, which, as above, has been held to arise from the fact of the collision. It was, according to the evidence, the duty of the agent at Vass to notify the engineer of train No. 6 of the departure of "extra 200" (Stewart) from Vass, which he did not do, and as the collision was six miles from Vass and two miles from Southern Pines, this negligence would seem to have caused the collision. The witness further stated that if the operator at Vass had wired the train dispatcher of the departure of No. 200, that in his opinion No. 6 could have been prevented from going beyond Manly. The train dispatcher, who was at Raleigh, while giving Stewart orders to pass No. 8 at Vass, apparently from the evidence, overlooked making any meeting place for the "extra, 200" and No. 6, though he knew that No. 6 had no knowledge of No. 200 being on the road. If he was to pass No. 6 as well as No. 8 at Vass, why was No. 8 alone mentioned in his order? When the agent at Vass gave Stewart a "clearance card" that was notice to him that the way was clear, "to go ahead" to the next point where there was a telegraph office to get further orders—as he was running under such orders and not under any schedule. Had the operator at Vass promptly notified the dispatcher at Raleigh, he could have notified and held No. 6 at Southern Pines or directed it to take the siding at Manly, for the collision occurred only two miles from Southern Pines, near Manly, and six miles from Vass. It was also the duty of the operator at Southern Pines to notify the

train dispatcher at Raleigh of the departure of No. 6, but the train dispatcher at Raleigh had to ask. The latter's uneasiness, after actually receiving notice ,of the departure of "200 extra" from Vass, and his efforts to stop the trains, tend to show that he had failed to notify No. 6 as well as "extra 200" where they must pass. Had he done so, he would have had no uneasiness, as there were three side-tracks between Vass and Southern Pines. Stewart, having received orders to pass No. 8, but no orders as to passing No. 6, upon receiving "clearance card" from the agent at Vass, proceeded in accordance with his only other order to go "from Raleigh to Hamlet," expecting of course to get other orders, if any, at Southern Pines. The company's rule 174*a*, which Stewart had in his pocket when killed, provides "Receipt of train order does not give a train the *right* to leave until signal is set to safety or *clearance card* is given." It was in evidence that "meeting orders were always given to extra trains"; that Stewart had such orders as to No. 8 at Vass, and there was told there were no other orders for him and was given the .clearance card (found on his dead body) which under the above-quoted rule gave his train "the right to leave." He could get no further orders till he got to Southern Pines. There was negligence in the train dispatcher in giving neither Stewart nor No. 6 notice of meeting point, and in the agent at Vass giving Stewart a clearance card, which could only mean "go ahead, the way is clear."

There was much said in the argument as to the provisions as to "superior" and "inferior" rights of way in the rules and regulations of the company, but Rule 455 expressly provides: "The terms 'superior right' and 'inferior right' in these rules refer to the right of trains under time-table and train rules, and not to rights under *special* orders." This "extra" No. 200 was running solely under special orders "to go to Hamlet" and with orders to pass No. 8 at Vass, and a "clearance card" at

the latter place, which authorized the engineer to go on to the next point where he could get orders. If it did not give him that authority, for what purpose was it given him? He could not know what trains were late, and after his "clearance card" he had a right to presume that if there was any other train in his way it had been or would be notified not to leave Southern Pines.

If there is evidence, or inferences, to be drawn contrary to the above, it was a matter solely for the jury. The plaintiff insists that besides the presumption of negligence arising from the fact of collision, there were nine particulars as to which there was negligence, which should have been submitted to the jury, to-wit:

1. In sending the plaintiff's intestate on the road without a sufficient and proper train crew. *Arrowood v. Railroad,* 126 N. C., 629.

2. In failing to arrange a meeting place for "extra 200" and train No. 6.

3. In the failure of the operator at Vass to notify the engineman of No. 6 of the departure of "extra 200" from Vass.

4. In the failure of the telegraph operator at Vass to promptly report to the train dispatcher at Raleigh the arrival and departure of "extra 200."

5. In the failure of the operator at Southern Pines to notify the train dispatcher at Raleigh of the arrival and departure of No. 6 from Southern Pines.

6. In violation of Rule 389 by the crew of No. 6 in leaving Southern Pines in less than twenty minutes after the departure of No. 8.

7. In violation of Rule No. 405 by the engineer and crew of No. 6 in leaving Southern Pines before the arrival of No. 66.

8. In failing to establish and maintain telegraph offices at Lake View, Niagara and Manly so as to insure the safe operation of its trains between Southern Pines and Vass.

9. In failing to adopt and use the safer system known as "block system," which was in general use, and referred to in the rules of defendant.

But as we have held that enough has been shown to require the facts to be submitted to the jury, it is unnecessary to consider the other grounds of negligence presented. As to the eighth ground, if there had been no telegraph office between Raleigh and Hamlet, or such offices only fifty or twenty miles apart, it would certainly be negligence as a matter of law to risk the lives of employees and passengers without such necessary adjuncts in operating the defendant's trains. Whether it was negligence to fail to have a telegraph office between Vass and Southern Pines, a distance of eight miles, when the single track was so crowded as to require three stations, or sidings, between these two points, and when (as on this occasion) such intermediate telegraph office would have saved the lives of four men and the crippling of others, is probably a mixed question of fact and law, which should be submitted to the jury. The question whether the receipts of such telegraphic office would be enough to make it profitable to the company to maintain it, is an entirely secondary consideration, if it was reasonably necessary for the safe-guarding of the lives of employees and passengers.

Nor is it necessary to hold now that the failure of this great through line, crowded with business, to adopt the "block system" is negligence which, as this Court in the *Greenlee* and *Troxler cases,* 122 N. C., 979, and 124 N. C., 191, held in regard to the failure to adopt automatic couplers, would render the common carrier liable *per se* for any death or injury caused by the failure to adopt them. The evidence in this case is that the "block system" is in very general

use, and that if it had been in use on this system this catas-
trophe could not have occurred.   The ruling of the Court in
*Witsell v. Railroad,* 120 N. C., 557, is that it is culpable
negligence, making the carrier responsible for all injuries
resulting therefrom, to fail to use "any approved appliance
which is in general use and necessary for safety." . This rule
has been reiterated and adhered to in every case since, includ-
ing *Bottoms v. Railroad,* 136 N. C., 473.   The writer, how-
ever, is free to say now, speaking for himself, that it is culpa-
ble negligence when any employee or passenger loses his life
or sustains injury in a "head-end" collision from a failure to
provide the "block system," which would prevent the possi-
bility of that class of collisions.   The obtaining of higher
dividends is entirely a secondary matter to the safety of em-
ployees and passengers, as it is also to the convenience and
comfort of the public, for which end alone charters to rail-
roads, with the power to condemn rights of way under the
power of eminent domain, are granted.   For the guarantee
of that safety and convenience, the sole resort is to the courts
and juries of the land.

The plaintiff had a constitutional right to have the ques-
tion of negligence, upon this evidence, submitted to a jury,
and in denying her that right there was error.

Error.

HOKE, J., concurs in result.
BROWN, J., did not sit in this case.

WALKER, J., concurring in result only.   Our decision, I
think, should be confined to only two grounds: First. That
the agent at Vass had given to Stewart, the engineer of train
No. 200, a clearance card which, interpreted by the language
of Rule 174a, meant that he had the right to leave the station
and proceed with his engine to the next stop.   This, I think,

was evidence of negligence on the part of the agent at Vass, which might have been the proximate cause of the intestate's death and should have been submitted to the jury, the negligence of a fellow servant not now being among the ordinary risks which are assumed by an employee of a railroad company. Private Laws of 1897, chap. 55. Second. There was evidence tending to show that it was the duty of the agent at Vass to notify the train dispatcher at Raleigh of the arrival of No. 200 (the engine in charge of Stewart) at Vass, so that orders could be issued to Stewart for his guidance in the further movement of his engine, and in my opinion the failure of the agent at Vass to notify the train dispatcher may have been the proximate cause of the testator's death. The decision of either of these two questions in favor of the plaintiff is sufficient to dispose of the case, and it is not necessary to consider or discuss any other matter. For these reasons I concur only in the conclusion of the Court, and not in anything said in its opinion which does not bear directly upon the two questions I have mentioned.

CONNOR, J., concurs in opinion of WALKER, J.