H. J. OVERCASH v. CHARLOTTE ELECTRIC RAILWAY LIGHT AND POWER COMPANY.

(Filed 14 May, 1907).

1. **Street Railways—Evidence—Negligence.**—In an action for damages arising from the alleged negligence of the defendant in the derailment of its street car, causing injury to the plaintiff, evidence that other cars had run off at the same place is incompetent when it is not shown that the condition at or near the time it was alleged other cars ran off was the same as at the time the plaintiff was injured, and that the accident was "the most usual" result of the existing conditions.

2. **Same—Duty of Railway Company—Track—Negligence—Prima Facie Case—Burden of Proof.**—It was the duty of the defendant railway company to keep its track properly constructed and in proper condition, also its car and motive power, and to have

it operated by competent persons in a proper manner. When a derailment is shown, a *prima facie* case is made out, and the burden is upon the defendant to show that the injury was occasioned by an accident.

3. Same — Contributory Negligence — Issues — Prayers for Instruction.—When the questions of negligence and contributory negligence arise in an action for the recovery of damages, an issue as to each should be submitted, and the prayers for special instruction should be appropriately addressed to each, so as to avoid confusion.

(The doctrines of "burden of proof," "burden of the issue" and *"prima facie* case" discussed and distinguished).

CIVIL ACTION, tried before *W. R. Allen, J.,* and a jury, at January Term, 1907, of the Superior Court of MECKLENBERG County.

The plaintiff sues for the recovery of damages alleged to have been sustained by reason of a derailment of defendant's car while a passenger thereon. He alleges that the derailment was caused by defendant's negligence, in that the car was overloaded with passengers, was running at an unlawful rate of speed, the track, the car, and its appliances were in defective condition, and that it was negligently operated; that one or more of these several conditions were the proximate cause of his injury. The defendant admitted that the car was derailed, but denied that it was guilty of negligence in any of the several respects set forth, or in any other respect. It also alleged that plaintiff was guilty of negligence and that such negligence was the proximate cause of the injury sustained by him. The finding of the jury upon the issue directed to defendant's negligence renders it unnecessary to set out the portions of the evidence, or the instructions, relating exclusively to plaintiff's alleged negligence. Plaintiff testified in regard to the time, place, etc., of his entry upon the car and the reason why he rode upon the platform. He also described the place, manner of the derailment, and of

his injury. There was testimony tending to show that, at the
time of the derailment, the car was running at a speed in
excess of that prescribed by the city ordinance. There was
also testimony in regard to the construction, condition, etc.,
of the track.

There was no direct evidence of any defect in the construc-
tion or condition of the car or its appliances, or the mode of
operation, other than the rate of speed. The defendant intro-
duced several of its employees—track foreman, master me-
chanic, conductor, etc.—who testified in regard to the condi-
tion of the track, car appliances, and mode of operation; it
also introduced passengers on the car and others who wit-
nessed the derailment, etc. In view of the exceptions in the
record, it is not necessary to set out the testimony, except
where applicable to the specific exception under discussion.
The jury answered the first issue "No," rendering it unnec-
essary to pass upon the others. From a judgment upon the
verdict, plaintiff, duly excepting, appealed.

*Maxwell & Keerans* for plaintiff.
*Burwell & Cansler* for defendant.

CONNOR, J., after stating the case: The first five excep-
tions are directed to the exclusion of testimony offered to
show that other cars, at other times, ran off the track at the
same place. The plaintiff alleged that there was a "dip," or
depression, in the track at the place of the derailment. The
witness Coleman was asked whether he had ever seen other
cars run off at the same place, running at about the same rate
of speed. In answer to questions asked by the Court, he said
that he did not know how long the depression had been there,
or whether it was there when other cars ran off. Several
other witnesses were asked the same questions. His Honor
excluded the testimony. It is undoubtedly true, as contended

by plaintiff's counsel, that, within certain limitations, this class of testimony is competent to show both the condition of the track and knowledge of defendant. The general principle controlling its competency is well settled; the difficulty in applying it arises from the varied forms in which it is presented. The question to be decided, when this class of testimony is offered, is whether it is relevant—that is, whether it reasonably tends to prove the fact in issue, is so related to it as to form a reasonably safe basis for a conclusion in regard to the fact in issue.

We had occasion, recently, in *Johnson v. Railroad,* 140 N. C., 581, to consider the principle and the authorities bearing upon it. The difficulty with which the plaintiff is confronted is the absence of like or similar conditions existing on the occasions upon which he sought to show that other cars ran off and those at the time when the plaintiff was injured. It is not suggested that the same car ran off the track on the two occasions. The witnesses say that they do not know whether at such times there was any depression in the track. Without repeating what we have said, in *Johnson's case, supra,* we think that his Honor's ruling was in accordance with that decision and the authorities cited. The testimony offered was calculated to introduce collateral matter not so related to the fact in issue as to aid the jury in passing upon it. The vital question here was whether the condition of the track, at the time of the derailment, was defective. This was a matter of observation. If it had been shown that the condition at or near the time it was alleged other cars ran off was the same as at the time the plaintiff was injured, and that the cars and appliances and the mode of operation on both occasions were approximately of the same character and in the same condition, the proposed testimony would have been competent, because common experience

teaches that similar conditions usually produce similar results. It is not necessary to show that they always do, but for practical purposes it is sufficient that they "most usually do." *State v. Brantly,* 84 N. C., 766. It seems, however, that plaintiff, by another witness, was permitted to show that other cars ran off the track at the place of the derailment.

Plaintiff requested the Court to instruct the jury: "That if they find as a fact, from the evidence, that the plaintiff got aboard defendant's car and paid his transportation therefor, then he was a passenger on same; and if they further find as a fact, from the evidence, that the said car on which he was riding ran off the track and plaintiff was injured thereby, as alleged in the complaint, and that said derailment was the proximate cause of the injury, then the law presumes that the defendant was negligent in allowing said car to become derailed, and the burden is upon it to satisfy the jury that said derailment was not caused by its negligence; and unless it has so satisfied the jury they should answer the first issue 'Yes.'" His Honor declined to give the instruction. Plaintiff excepted. The defendant requested the following instruction: "That while proof or admission of the derailment of the car raised what the law terms a presumption that such derailment was the result of the defendant's negligence, and casts upon it the burden of disproving negligence, yet the Court charges you that, notwithstanding the fact that the car was derailed, if you shall find by the greater weight of the evidence that the track at the place of derailment was in good condition, the car properly equipped and in good repair, and being carefully run at a proper rate of speed, then the Court instructs you that the defendant was not guilty of negligence, and you will answer the first issue 'No.'" His Honor gave all of this prayer except the following words, to-wit:

"and casts upon it the burden of disproving negligence, yet the Court charges you that, notwithstanding the fact that the car was derailed."

In his general charge to the jury, his Honor, among other things, said: "If you believe the evidence in this case that there was a derailment of the defendant's car at the time of the injury complained of, and if there was a derailment, there would arise from this fact alone a presumption of negligence upon the part of the defendant, and this presumption of negligence, if not rebutted, is evidence of negligence for consideration of the jury, and if it satisfies you that the defendant was negligent and that this negligence was the real and proximate cause of the injury, then it would be the duty of the jury to answer the first issue 'Yes.' This presumption of negligence may be rebutted by showing that the track of the defendant company was in a reasonably safe condition; that the car was equipped in a reasonably safe manner, and that it was being operated in a reasonably prudent way; and, if rebutted, then the presumption of negligence arising from the derailment is no longer evidence of negligence."

There is no substantial difference between counsel as to where the burden of proof lies when it is shown, or admitted, that a railway train has been derailed and that the same rule applies when the action is against a street surface railway company. This Court has uniformly held, and in that respect it is in harmony with other courts and approved text-writers, that a derailment of a railway train raises a presumption or makes a *prima facie* case of negligence—that is, a presumption that there is a defective construction or condition of the car, or the track, or the mode of operation. *Marcom v. Railroad,* 126 N. C., 200; *Wright v. Railroad,* 127 N. C., 229; *Stewart v. Railroad,* 137 N. C., 687; *s. c.,* 141 N. C., 266; *Haynes v. Railroad,* 143 N. C., 154. This may be regarded as settled. Did his Honor so instruct the

144—37

jury? In the defendant's prayer, which was given, he expressly told the jury that proof or admission of the derailment or the car raises, what the law terms, a presumption that such derailment was the result of defendant's negligence. It is true that he omitted the words "and casts the burden of disproving negligence," etc., but we do not perceive how this affected, the force of the affirmative declaration just made, especially in view of the instruction given in the charge. His Honor in the general charge repeated that the fact of the derailment raised a presumption of negligence and "if not rebutted is evidence of negligence," etc., with the further instruction that if they were satisfied that defendant was negligent, and that this negligence was the proximate cause of the injury, they would answer the first issue "Yes." He then instructed them in what manner the defendant might rebut the presumption. It is possible that some confusion has arisen by not keeping clearly in view the distinction between the "burden of proof" and "burden of the issue." *Meredith v. Railroad,* 137 N. C., 478; *Stewart v. Carpet Co.,* 138 N. C., 60; *Ross v. Cotton Mills,* 140 N. C., 115. In some cases the term *res ipsa loquitur* has been used as synonymous with *prima facie* case, as in *Ellis v. Railroad,* 24 N. C., 138, wherein *Judge Gaston* says: "Where the plaintiff shows damage, resulting from defendant's act, which act with the exertion of proper care does not ordinarily produce damage, he makes out a *prima facie* case of negligence." *Wright v. Railroad, supra.* It is sometimes spoken of as evidence raising a presumption. *Womble v. Grocery Co.,* 135 N. C., 474; *State v. Barrett,* 138 N. C., 630.

The principle underlying all of these exceptions is based upon general experience and observation, which teaches in this class of cases that ordinarily, when a railway track is

properly constructed and in proper condition, the car and motive power in like condition, and operated by competent persons in a proper manner, it does not, without some disturbing agency, become derailed. It is the duty of the railway company to provide for these conditions. Therefore, when a derailment occurs, the law, based upon experience, declares, in the absence of any explanatory cause, that all of these conditions did not exist; that some one or more of them were absent, and that such absence is a breach of duty on the part of the defendant company. But the same experience teaches that human foresight and care have not been able as yet to remove the affairs of men from the domain of what we call, for want of a more accurate term, unavoidable accident, which is defined to be "an event from an unknown cause or an unusual and unexpected event from a known cause, chance, or casualty." As, if a railroad bed be in good order and the engine and cars be in good order, and the engineer and other attendants be skillful and careful, and yet a rail breaks, the train is crushed, and the employees and passengers are killed, that is an unusual and unexpected event from a known cause—an accident. *Reade, J.,* in *Crutchfield v. Railroad,* 76 N. C., 320; *Carter v. Lumber Co.,* 129 N. C., 203; *Raiford v. Railroad,* 130 N. C., 597. This risk, which excludes all ideas of negligence, every one must assume in every relation in life; every contract is made, every right acquired, and every duty assumed with this law of life understood and discounted. It would be impossible to maintain and carry on the affairs of civilized life without a recognition of this truth.

When a common carrier undertakes to carry passengers, the law imposes upon it the duty of exercising the highest practicable degree of care, to provide safe modes of transportation and to keep them in good and safe condition. When an injury is sustained by a passenger by reason of

collision, derailment, or other miscarriage of the car, the
carrier is required to show, either from the testimony of the
plaintiff and his witnesses or by the introduction of affirm-
ative evidence, that it has discharged this duty.    In the
absence of either, the jury should find that the conditions
producing the injury were caused by negligence of the car-
rier.   When it has done so, the derailment or other condition
is necessarily attributed to an accident.    Hence it is that the
presumption or *prima facie* case established by proof or
admission of the derailment is always open to be explained—
to be rebutted—that is, that notwithstanding the presump-
tion raised upon the fact of derailment, in truth there was
no defect in the car, track or operation; that the derail-
ment was the result of some independent cause, or what is
called an accident; and, at this point, legal and moral lia-
bility ceases.    Professor Thayer says: "Presumptions are
aids to reasoning and argumentation, which assume the truth
of certain matters for the purpose of some given inquiry.
They may be grounded on general experience or probability
of any kind, or merely on policy and convenience.    On
whatever basis they rest, they operate in advance of argu-
ment or evidence, or irrespective of it, by taking something
for granted; by assuming its existence.    When the term is
legitimately applied, it designates a rule or a proposition
which still leaves open to further inquiry the matter thus
assumed.    The exact scope and operation of these *prima
facie* assumptions are to cast upon the party against whom
they operate the duty of going forward in argument or
evidence on the particular point to which they relate."
Treatise on Ev., p. 314.    Greenleaf says, "They depend
upon their own natural force and efficiency in generating
belief or conviction in the mind," etc.    Greenleaf Ev., sec.
44.    Elliott says that they impose upon the party against
whom they are invoked the duty "to go forward with his

proof." *Stewart v. Carpet Co.,* 138 N. C., 60; *Ross v. Cotton Mills,* 140 N. C., 116. They are more useful in the trial of causes to aid the Court in prescribing the manner of developing the several phases of a controversy than to the jury in reaching a correct conclusion. Their efficiency "in generating belief" in any given case depends so much upon the facts in the particular case that the weight and effect to be given them by the jury should be explained with care by the Court. By way of illustration: The possession of stolen property soon after the larceny raises a presumption against the person in whose possession it is found.

So many conditions are found to exist in any given case affecting the strength or weakness of the presumption that it is found to be of little aid to the jury in reaching a verdict—the length of time elapsing after the larceny, the conduct, character, etc., of the person in whose possession the stolen property is found, the kind of property, the place at which it is found, and the manner in which it is used or kept, and innumerable other conditions occurring to the mind, which may and usually do exist.

Again, when it is shown that A killed B with a deadly weapon, the presumption of malice arises. This is elementary. Yet it is manifest that in almost every case surrounding circumstances so modify, strengthen, or weaken the presumption that it is of little value in fixing the degree of guilt. Courts frequently use language calculated to make the impression on the minds of jurors that, unless the defendant introduces evidence, they are compelled by reason of the presumption to find a verdict against him, although, from the plaintiff's evidence and the physical or other conditions surrounding the case, they believe the contrary to be the truth.

The purpose of all rules of evidence is to ascertain the truth, and to this end it is said they are based upon ex-

perience rather than logic. It is never intended that the jury shall, except when controlled by an irrebuttable presumption, find a verdict contrary to the truth by invoking a presumption, when there is evidence from which the truth may be ascertained.

In *Coffin v. United States,* 156 U. S., 432 (459), *Mr. Justice White* said that a presumption is "an instrument of proof created by the law," and Greenleaf says it is "evidence, the benefit of which the party is entitled to." Greenleaf Ev., sec. 34. The subject is discussed at length by Elliott and by Wigmore. All of the writers on the law of evidence concede that the subject is involved in "much confusion." In *Coffin's case, supra, Mr. Justice White,* adopting the view of Greenleaf, held that the presumption, raised by the law, based upon experience, in that case, of innocence, was "evidence created by the law," and not a mere rule for regulating the burden of proof. His reasoning and conclusion are said by Professor Thayer to be "very questionable" (Ev., 315), saying "presumptions are not in themselves either argument or evidence, although for the time being they accomplish the result of both. * * * Presumptions, assumption, taking for granted, are simply so many names for an act or process which aids and shortens inquiry and argument." In his lecture before the Law School of Yale University (Ev., App. B.) he reviews the entire field historically and critically, concluding that:

"1. A presumption operates to relieve the party in whose favor it works from going forward in argument or evidence.

"2. It serves, therefore, the purpose of a *prima facie* case, and in that sense it is, temporarily, the substitute or equivalent of evidence.

"3. It serves the purpose until the adversary has gone forward with his evidence. * * * ·

"4. A mere presumption involves no rule as to the weight of evidence necessary to meet it. * * *

"5. A presumption itself contributes no evidence and has no probative quality. * * * A presumption may be called an 'instrument of proof' in the sense that it determines from whom evidence shall come, and it may be called something in the nature of evidence for the same reason."

His Honor, we think, adopted this line of thought in his instructions. After telling the jury that the fact alone of a derailment raised a presumption of negligence, he said that if not rebutted "it was evidence of negligence," thus carrying the plaintiff's case to the jury, imposing upon the defendant the duty of persuading the jury, from the evidence introduced by the plaintiff or by going forward with affirmative evidence, that in truth there was no negligence. Thus, the plaintiff was given the benefit of the presumption in favor of his allegation. He further says, "if satisfied that there was negligence and that such negligence was the proximate cause of the injury, the plaintiff was entitled to the verdict." In this way he clearly kept in view the distinction between the "burden of proof," which he placed upon the defendant, and the burden of the issue, which the plaintiff carries throughout the trial. In putting the presumption into the jury box as evidence he followed the opinion of *Judge White,* but from Professor Thayer's point of view he gave the plaintiff more than he was entitled to. He then proceeds to explain to the jury what facts, if proved, would rebut the presumption of negligence, and says to them that if so rebutted the presumption is no longer evidence.

It will be observed that he does not tell the jury that in this event they should answer the issue "No." That would have been to withdraw the case from the jury. He proceeds to instruct them in regard to those matters in respect to which there was affirmative evidence of negligence, which he does with his usual clearness and accuracy.

The danger of leaving the minds of the jury in confusion by a general reference to the terms *"prima facie* case" and "presumption" is strikingly illustrated in the report of the case of *Queen v. O'Doherty,* 6 St. Trials N. S., 831. The defendant was charged with feloniously compassing to dethrone the Queen by publishing certain alleged treasonable articles. The statute made the fact that he was proprietor of the paper *prima facie* evidence of knowledge that the articles were in it. The Judge so instructed the jury. After considering the case for some time they returned, asking for further instructions, when the foreman said that some of the jurors did not know the meaning of *"prima facie"* and wished to know whether the Judge meant to say that *prima facie* evidence was sufficient to warrant the jury in convicting; that some of the jury thought that, there being *prima facie* evidence of guilt, they should "at once go and find him guilty." In response, *Pennyfather, B.,* said: "I did not mean to direct you or to tell you that, in point of law, because he was the publisher and proprietor of the paper, he therefore necessarily knew the contents. I did not mean to tell you that, but I told you that it was evidence that he did know the contents, and that you were to form your verdict upon the whole of the case." He further said, in conclusion: "I before said I would not offer one word of comment upon the weight of that evidence, nor will I do so now." This, we think, was in substance what his Honor told the jury. The same charge given in *State v. Barrett, supra,* was approved.

The plaintiff produced no evidence of any defect in the car or the method of its operation. There was direct evidence tending to show a slight "dip" in the track near the place of the derailment. There was evidence that the car was running at a higher speed than the ordinance prescribed; on the contrary, there was evidence that it was not running so fast

as allowed by the ordinance.  His Honor gave the instruction requested by the plaintiff in this respect.

There was evidence on the part of the defendant that the car and the track were inspected a short time before and after the derailment, and found in good condition.  He instructed the jury as requested by the plaintiff in regard to the duty of the defendant to so lay out, construct, and equip its track that its cars would keep on the track, and to exercise the highest degree of care and skill consistent with the practical operation of the road and the dangerous method of power employed, and that if there was a "dip" or sunken place in the track where the derailment occurred, and if such condition was the cause of the derailment, they should answer the issue "Yes."

He further instructed the jury, at the defendant's request: "Notwithstanding the fact that the car was derailed, yet if the jury shall find by a greater weight of the evidence that such derailment was the result of a mere accident or the motion of the car, ordinarily incident to cars while running at a lawful rate of speed, then the defendant would not be guilty of negligence and the jury will answer the issue 'No.' "  The plaintiff excepted.  This instruction puts upon the defendant the burden of showing that the derailment was accidental.  The exception cannot be sustained.

He also instructed the jury that the measure of duty imposed upon the defendant was the exercise of such care and skill in the operation of its cars as an ordinarily prudent person would have exercised under like circumstances.  He had already instructed them that the defendant was required to exercise the highest degree of care—that is, that such was the degree of care exercised by the ordinarily prudent person under like circumstances.  In the general instructions he carefully and fully sets forth the contentions of the parties, calling attention to the testimony relied upon to sustain

each contention, and explained the law applicable to the several places of the controversy. A large number of the exceptions are directed to instructions given and refused upon the issue in regard to contributory negligence. While not necessary to the disposition of the appeal, we have examined these instructions upon the suggestion that some of them bore upon the first issue.

We note that a number of instructions asked include hypotheses involving both negligence and contributory negligence, concluding with a direction to the jury to answer the first issue "Yes" and the second issue "No." While this may be, and probably is, the logical method of dealing with the propositions involved in almost every case of negligence, and when, as in *Scott's case,* 96 N. C., 428, the whole controversy is tried upon one issue, the most satisfactory way to present the question, yet, in view of the statute requiring the defense of contributory negligence to be specially pleaded, and putting the burden of the issue upon the defendant, the instructions should be directed to each issue separately. To undertake the mingling of the two in one instruction is confusing, and certainly the whole question is sufficiently confused now. The efforts of courts to deal with it satisfactorily have been far from successful.

The case appears to have been thoroughly developed and every phase of it considered. There was ample evidence to sustain the verdict. We find in the entire record no error.

No Error.