JOSEPH E. McDOWELL v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 5 December, 1923.)

1. **Evidence—Issues—Burden of Proof—Questions for Jury—Railroads— Fires—Negligence.**

    Upon conflicting evidence as to whether defendant railroad company's train, in passing the plaintiff's premises adjoining the right of way over which it passed, set afire and destroyed the plaintiff's dwelling, the finding of the fact by the jury that the fire was caused by sparks from the train is only sufficient evidence upon which the jury may find the issue of negligence in the plaintiff's favor, and does not relieve him of the burden to establish the issue of negligence by a preponderance of the evidence.

2. **Same—Instructions.**

    Where the burden of the issue remains upon the plaintiff to show the negligence of the defendant railroad company in causing him damage by setting fire to his property by the passing of its train, with a defective

McDowell *v.* R. R.

spark-arrester, it is reversible error for the trial judge to charge the jury that if they found the fire was caused by sparks from the defendant's locomotive, the burden of the issue would shift to it to disprove its negligence as the cause of the damage, the plaintiff's evidence being sufficient only to sustain a verdict on the issue, if rendered in the affirmative.

**3. Same—Constitutional Law—Trials by Jury—Substantial Rights.**

The rules of law as to the burden of proof between the parties to litigation respecting damages to property resulting from negligence is one of substantial right guaranteed by the Federal Constitution, and more emphatically by our State Constitution, Art. I, sec. 19, requiring "that in all controversies at law respecting property the ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable."

**4. Same—Instructions—Appeal and Error.**

Where there is evidence in plaintiff's behalf, and *per contra*, that sparks coming from defendant's passing locomotive set fire to and destroyed his dwelling, in his action to recover damages for the railroad's negligence therein, the trial judge should instruct the jury properly upon the law as to the burden of the issue, and an instruction that the burden of proof of the issue would shift to the defendant should they find the plaintiff's evidence to be true is reversible error.

CLARK, C. J., dissenting.

APPEAL by defendant from *Lane, J.,* at March Term, 1923, of RANDOLPH.

Civil action. The action is to recover damages for destruction of plaintiff's house, and personal property therein, by fire, on 6 December, 1920, through the negligence of defendant in operating its train, and chiefly by reason of a defective spark-arrester on the defendant's engine, the house being situate just adjacent to defendant's right of way, in or near the town of Asheboro, N. C. Defendant denied that the house was set on fire by its train, or otherwise, and denied that the engine was in any way defective; and both sides offered large numbers of witnesses in support of their respective positions. On issues submitted, the jury rendered verdict as follows:

"1. Was the building and other property of plaintiff destroyed by fire by the negligence of defendant, as alleged in the complaint? Answer: 'Yes.'

"2. If so, what damage is plaintiff entitled to recover of defendant? Answer: '$4,000.' "

Judgment on verdict, and defendant excepted and appealed, assigning errors.

*Hammer & Moser, C. N. Cox, and H. M. Robins for plaintiff.*
*J. A. Spence for defendant.*

HOKE, J.   There were a large number of witnesses examined by both of the parties to the controversy, the testimony on the issue of liability being directed chiefly to the inquiry whether plaintiff's property was set on fire by defendant company or its agents, and if so, was this by reason of a defective spark-arrester on the engine drawing defendant's train at the time?   And in reference thereto the court charged the jury as follows:

"There is a rule of law which says that whenever it is shown or found to be a fact, or admitted by a defendant, that a fire is actually caused and started from cinders or sparks from an engine, that then the law raises a presumption that it was due to negligence, and then the burden shifts to the defendant to show by the greater weight of the evidence that there was not negligence and that the fire did not escape from the engine and start another fire because of any negligence; and so, in this case, the burden would be upon the plaintiff to satisfy the jury that the fire actually started from the locomotive engine; and if the plaintiff has satisfied you of that fact by the greater weight of the evidence, then the burden would be upon the defendant to go forth and satisfy you by the greater weight of the evidence that there was no negligence; but unless plaintiff satisfies you first that the fire actually started from the cinders or sparks from the engine, then no presumption of negligence would arise from the mere starting of the fire from the engine, and the negligence proven would have to be proven by the plaintiff by the greater weight or preponderance of the evidence as well as the starting of the fire from the engine."

We find nothing in the further instructions of the court that makes any substantial change or modification in this position, the court, in the latter part of the charge, directing the jury that the evidence should be considered and the rights of the parties on the issue of liability determined under the rule as formerly given.   This being true, we are of opinion that the charge as stated is erroneous and defendant, having duly excepted, is entitled to a new trial of the cause.

The question presented has been the subject of extended discussion in this Court, and there has been some variety of decision concerning it, but it is the settled ruling of the later and prevailing cases that where it is shown that the property of a claimant has been destroyed by fire communicated from defendant's train, that will make a *prima facie* case carrying the issue of liability to the jury, and of itself and without more is sufficient to justify a verdict as for a negligent wrong.

In numbers of the cases, particularly of the former time, it is said that the facts suggested raise a presumption of negligence, but, as shown in *Overcash v. Electric Co.,* 144 N. C., 572-582, and other cases, it is but evidence and termed presumptive only in the sense as stated, that it per-

mits and justifies an inference of liability if the jury are thereby satisfied that a negligent wrong is established, and it should never have the effect of changing the burden of the issue by putting on the defendant, as was done in the present instance, the burden of disproving the negligence charged, by the greater weight of the evidence.

Again, it is said in other decisions that when the facts suggested have been made to appear, it is the duty of the defendant to go forward with his proof; but this does not at all mean that, as a matter of law, defendant is required to offer proof in rebuttal, but only that if he fails to offer evidence in explanation of the conditions presented, he takes the risk of having a valid verdict rendered fixing him with liability.

The question referred to was very fully discussed by *Associate Justice Adams* in the recent case of *White v. Hines,* 182 N. C., 276, injury from derailment of a train, and where, after a careful and discriminating review of a large number of the decisions on the subject, it was held to be the rule now prevailing with us:

"Where a *prima facie* case of negligence is made out, the jury will be justified in finding for the plaintiff thereon, the burden of the issue remaining on the plaintiff, it being for the jury to determine whether upon the entire evidence the plaintiff has established the defendant's negligence by the greater weight of the evidence, leaving it for the defendant to determine whether it will introduce further evidence or take the chance of an adverse verdict on the issue."

And, in the opinion, the learned judge, among other things, said: "A *prima facie* case or evidence is that which is received or continues until the contrary is shown. It is such as in judgment of law is sufficient to establish the fact, and if not rebutted, remains sufficient for the purpose. *Troy v. Evans,* 97 U. S., 3; *Kelly v. Johnson,* 6 Pet., U. S., 622; Jones on Evidence, sec. 8; *S. v. Floyd,* 35 N. C., 385; *S. v. Wilkerson, supra.* Even if the *prima facie* case be called a presumption of negligence, the presumption still is only evidence of negligence for the consideration of the jury. *Overcash v. Electric Co., supra; Shepard v. Telegraph Co., supra; Mumpower v. R. R., supra.* In some of our decisions the expressions *res ipsa loquitur, prima facie* evidence, *prima facie* case, and presumption of negligence have been used as practically synonymous. As thus used, each expression signifies nothing more than evidence to be considered by the jury. *Womble v. Grocery Co., supra; Stewart v. Carpet Co., supra; Ross v. Cotton Mills, supra; Shepard v. Telegraph Co., supra; Mumpower v. R. R., supra; Perry v. Mfg. Co.,* 176 N. C., 69. When the plaintiff proves, for instance, that he has been injured by the fall of an elevator, or by a derailment, or by the collision of trains or other like cause, the doctrine of *res ipsa loquitur* applies, and the plaintiff has a *prima facie* case of negligence for the consider-

ation of the jury. Such *prima facie* case does not necessarily establish the plaintiff's right to recover. Certainly, it does not change the burden of the issue. The defendant may offer evidence or decline to do so at the peril of an adverse verdict. If the defendant offers evidence the plaintiff may introduce additional evidence, and the jury will then say whether, upon all the evidence, the plaintiff has satisfied them by its preponderance that he was injured by the negligence of the defendant."

And both the statement and the conclusion reached are fully supported by well-considered authorities of this Court dealing directly with the question. *Page v. Mfg. Co.,* 180 N. C., 330-334, etc.; *S. v. Wilkerson,* 164 N. C., 432; *Brock v. Ins. Co.,* 156 N. C., 112; *Cox v. R. R.,* 149 N. C., 117 (a case of putting out fire); *Winslow v. Hardwood Co.,* 147 N. C., 275; *Overcash v. R. R.,* 144 N. C., 572; *Stewart v. Carpet Co.,* 138 N. C., 60; *Womble v. Grocery Co.,* 135 N. C., 474. And the Supreme Court of the United States has approved and upheld this view of the matter. See *Sweeny v. Erwin,* 228 U. S., 233, and authorities cited.

In *Page v. Mfg. Co.,* a case of setting fire to property, it was held among other rulings:

"Where, in an action to recover damages of a railroad for the negligence of the defendant in burning over plaintiff's lands, there is evidence that the injury was caused by sparks from the defendant's passing locomotive which started the conflagration, a *prima facie* case is established under the doctrine of *res ipsa loquitur,* and the burden of the issue remains with the plaintiff, the *prima facie* case being only sufficient evidence to carry the case to the jury and to sustain a verdict in the plaintiff's favor. An instruction to the jury which places upon the defendant the burden of satisfying the jury by a preponderance of the evidence that it was not negligent is error.

"It is reversible error for the trial judge to instruct the jury, in effect, that the burden of the issue did not remain with the plaintiff, in his action against a railroad company for negligently setting out fire from its passing locomotive to the injury of his land, where applying the doctrine of *res ipsa loquitur.*"

In *Cox v. R. R.,* 149 N. C., 117, the decision is expressed in the headnote as follows: "In an action to recover damages to plaintiff's property alleged to have been negligently caused by sparks emitted from defendant's passing engine, when there was evidence tending to show negligence: *Held,* (1) It was error in the trial judge to charge the jury, in effect, that if they found the evidence to be true there would be a presumption in law of defendant's negligence, and the burden of proof would be upon defendant to show to the contrary. (2) Plaintiff's evidence made out a *prima facie* case to the extent only of carrying the

case to the jury to find whether or not the injury was caused by defendant's negligence. (3) The burden of the issue does not shift from plaintiff, while the burden of proof may do so. (*Winslow v. Hardwood Co.,* 147 N. C., 275, cited and approved.)

And in the United States case of *Sweeney v. Erwin* it was held: (1) Where the rule of *res ipsa loquitur* applies it does not have the effect of shifting the burden of proof. (2) *Res ipsa loquitur* means that the facts of the occurrence warrant an inference of negligence, not that they compel such an inference, nor does *res ipsa loquitur* convert the defendant's general issue into an affirmative defense. (3) Even when the rule of *res ipsa loquitur* applies, it is for the jury to determine whether the preponderance is with the plaintiff.

In *White v. Hines* a verdict and judgment for plaintiff was upheld on the ground that, construing the charge as a whole, it was not clearly made to appear that there was reversible error. It is possible that the charge in that case received an interpretation by the Court too favorable to the plaintiff; but, however that may be, there is no doubt of the principle there announced, and fully supported by the other cases cited, that the burden of the issue never shifts to the defendant, and that it is reversible error for the trial court to instruct the jury that, on a *prima facie* case being made to appear, the defendant has the burden of disproving negligence by the greater weight of the evidence.

In the present case, and under the principle stated, the charge of the court having placed this burden upon the defendant, and without qualification, the same is erroneous and defendant's exception thereto must be sustained.

And we may not approve of the suggestion that the exception is not of sufficient importance to justify an interference with an extended and costly trial of this kind, or that the jury should be allowed to settle the question at issue without any rule to guide them in their deliberations. This trial by jury has been the accepted and approved method of determining questions of disputed fact among English-speaking peoples for more than 900 years, and while particular verdicts have been at times severely criticized, the proposition to make a change to any other method has never made any headway, but the principle has grown and strengthened by time, and its integrity is guaranteed in the Constitution of both State and nation; that of the State being especially impressive, Article I, section 19, providing "that in all controversies at law respecting property the ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable." And one of the chiefest features of such a trial as contemplated in these instruments is that the evidence shall be received and weighed in accordance with established rules which have

McDowell v. R. R.

been found by time and experience to make for the ascertainment of truth and the maintenance of right, and a clear violation of such rules can never be regarded as of slight importance.

Speaking to this question in *Hosiery Co. v. Express Co.,* 184 N. C., 478-480, *Stacy, J.,* said: "The rule as to the burden of proof is important and indispensable in the administration of justice. It constitutes a substantial right of the party upon whose adversary the burden rests, and therefore it should be carefully guarded and rigidly enforced."

In *S. v. Parks,* 25 N. C., 296, *Gaston, J.,* said: "It is essential to the uniform administration of justice, which is one of the best securities for its faithful administration, that the rules of evidence should be steadily observed."

And *Chief Justice John Marshall,* in *Mima Queen v. Hepburn:* "It was very justly said by a great judge 'that all questions upon the rules of evidence are of vast importance to all orders and degrees of men. Our lives, our liberties and our property are all concerned in the support of these rules which have been matured by the wisdom of ages and are now revered from their antiquity and the good sense in which they are founded.' "

Nor should it be for a moment considered that the jury should be left to determine these vital rights between man and man without any authority to instruct or guide them in their deliberations. Such a course would turn this ancient and accepted mode of trial from an authoritative and orderly judicial procedure to a mere arbitration in *pais,* with all the uncertainties and inconsistencies that such a method would involve. We are gratified to believe that no such demoralizing proposition is likely to prevail in this jurisdiction now or at any future time.

For the reasons heretofore stated we are of opinion that defendant is entitled to a new trial of the cause, and it is so ordered.

New trial.

CLARK, C. J., dissenting: The dwelling-house of the plaintiff and his personal property therein were destroyed by fire 6 December, 1920, now three years ago, and the plaintiff alleges this loss was due to a defective spark-arrester on the defendant's engine, the house being situate just adjacent to defendant's right of way. The defendant denied that its negligence caused the damage, and this was the sole question at issue. The case was tried upon that issue of fact, and 57 witnesses testified for the plaintiff and 65 for the defendant.

It was a question of fact which could only be settled by testimony of witnesses and the verdict of a jury.

37—186

For many hundreds of years issues of fact have been thus settled, and the only burden ever imposed was that the plaintiff must prove his allegation to the satisfaction of the jury, or, in criminal cases, the formula has been the State must prove the defendant guilty beyond a reasonable doubt, and this Court has held that "fully satisfied" and "beyond a reasonable doubt" are synonymous. The jury have heard the case for many days and 122 witnesses, and have found there was proof to their unanimous satisfaction that the house was destroyed by fire caused by the negligence of the defendant as alleged in the complaint, and that the plaintiff is entitled to recover of the defendant $4,000.

Some fifteen or twenty years ago some dreamer or idealist conceived the design of splitting up the simple burden which the jury could understand of "fully satisfied" and "by the greater weight of the evidence" and procured this Court to hold, as he had previously persuaded some others to hold, that the burden of proof should be split up, and there then began the installation of the doctrine of the "burden of proof" shifting, and then there was the addition of the "burden of the issue," and then that these could shift, and then some ingenious and metaphysical word-carpenter added the doctrine of *prima facie* case and when that could carry the burden of liability to the jury or not, and the doctrine of *res ipsa loquitur* and the presumption of law and presumption of fact and as to which of these was preponderant, and when each of them should prevail and when they should shift back and when it was requisite to tell the jury as to these different shiftings backwards and forwards. The result has been so to entangle the matter that it is safe to say that there is not a judge presiding in any trial court in North Carolina today who can, with any safety of being affirmed on appeal, charge the jury as to these various weighty matters as to whether the burden of the *prima facie* case, or the burden of proof, or the burden of the issue or either of the presumptions should shift or exactly when it should shift and at what particular time it should be transferred, and whether and when the party shifting or transferring "should go forward with proof," and many other equally intelligible refinements.

Instead of the law being simplified, it has been inextricably confused, and it has been made impossible for any judge to assert with certainty that he has complied with these difficult and numerous complicated and embarrassing requirements which have been substituted for the old-fashioned, age-long requirement, which alone juries can understand and do understand, as to which side has the burden of proof. "By the multitude of words counsel has been darkened."

There has been no statute whatever in North Carolina nor any indication of one laying down a rule requiring these complicated disquisi-

tions to the jury, which can have no effect except to divert attention from the matter which the jury are to determine. If there is a trial judge in this State who can be sure that he is absolutely and accurately complying with the refinements which can be argued on appeal as to the exact time when the burden of the issue or the burden of proof shall shift, or the *prima facie* case, or the presumption, or when it should shift back, and whether in any case such shifting should be done by the greater weight of the evidence, or, as was gravely argued recently, whether upon a given state of facts it should shift back upon an even weight of·the evidence and not by preponderance—if all these matters are clear to any trial judge, it is very certain that there is not a jury of twelve honest, intelligent men who can understand them. They cannot spend a lifetime to puzzle them out, nor have they the bulging fees to induce them even to try to do so.

If this innovation had been brought about by any statute there might have been some clear form of expression prescribed which would enable the judges to guess as to the various phases of these technicalities and the exact time and the exact shifting of the preponderance of these various matters, and the indications that would foreshadow and adumbrate them, and to what extent they may go.

In this particular case the man's house was destroyed. He has asked for compensation, and a speedy trial was guaranteed by Magna Carta more than seven hundred years ago, but the result has been that he has been out of his house for more than three years, and up to date the matter is still not determined.

While there is but a single question for the twelve men to decide, and that is whether the jury are satisfied by the greater weight of the evidence that his house was burnt by the negligence of the defendant or not, the houseless man has now been condemned to go back and go over the whole trouble again, though he has put 57 witnesses on the stand and the defendant has had 65 witnesses to testify, and nothing yet is accomplished except court costs and lawyers' fees.

Such changes in our law should not be invented or introduced by the Court, for it is certain that no Legislature voicing the will of the people would ever enact such obstructions in the administration of justice.

The greatest trouble in the introduction of so many technicalities, so many ways to

"Distinguish and divide a hair betwixt south and southwest side,"

is the enormous and overwhelming advantage it gives wealthy suitors and corporations in delaying trial, making them costly, not only by the refinements as to the burden of these imperceptible distinctions as to who at a given moment is chargeable with the burden upon any given

point, but by insuring, as in this case, a new trial upon some perfectly immaterial and irrelevant matter which, no matter how it had been charged, according to the new rules, would not have made any difference to the jury who could not have understood such refinements. They are fully satisfied· whether the house was, or was not, burned down by the negligence of the defendant, and to determine that was the sole object of the trial. The jury of "good men and true" was not impaneled to split hairs.

There is also a tendency, notwithstanding the many recent statutes simplifying indictments, to add new requirements of technicalities as in the recent case, where the indictment for burglary was *verbatim* that which had obtained for ages, but a new technicality was added, without statute, with the result that a negro who entered the room of a white woman and laid his hands upon her at midnight was granted a new trial because of the omission of the word "attempt," which had never been required before, and for the failure to charge, as the defendant's counsel insisted, that the jury should have the option to give five different verdicts when upon the evidence only two were possible— guilty or not guilty in manner and form as charged. And this week, whether as a consequence or not, another negro charged with assault upon a white woman, upon trial in an adjoining county, has been "hid out" each night, a spectacle never before known in North Carolina.

In the case at bar, being a civil case, the jury, after hearing the testimony of 122 witnesses, found the only material fact, that the plaintiff's·house had been destroyed by fire set out by the defendant's engine; and now, after the lapse of three years, he must start over again to present his case, without his house, minus his lawyers' fees and plus a tremendous bill of costs, and the next judge, possibly·three years hence, may make some slight mistake in charging as to the presumption or the burden of the issue or the burden of proof, or the "going forward with the evidence" at exactly the right time or on the right side, and other matters of that nature. When such technicalities prevail, even the successful party is bankrupted unless very wealthy.

It ought to be the effort of every court, and certainly it is to the interest of the public, that trials should be made speedy, and be decided upon the merits and regardless of technicalities which make always in favor of the side in a civil case which can endure delay and expense, and in criminal matters they invariably work not for the public good nor for the administration of justice, but in behalf of the criminal, especially as to the latter in cases of exploiting a bank (when the sufferers have been the masses, the depositors) and in crimes against women, for as to these two crimes juries rarely misunderstand the evidence, and the demand of astute counsel for additional technicalities is urgent.

If the people of North Carolina wish these delays and desire these refinements, which frustrate justice and serve no good end, the change in that direction should be made by statute that we may know it is the will of the people, and not by refinements introduced by technical lawyers who urge them for the immense advantage it gives to a certain set of clients.

Certainly the people of the State have always evinced the opposite disposition, and *Chief Justice Ruffin* well said in *S. v. Moses,* 13 N. C., 463, that "in the criminal law nice objections of this sort were a disease of the law and a reproach to the Bench." A statute was then passed which the *Chief Justice* said was "meant to disallow the whole of them" and cut them up by the roots in consequence of a case, among others, in which one convicted of a heinous murder was discharged because the indictment left out the letter "k" in the word "knife" with which, as specified in the cumbrous indictment of that day, it was charged that he had made a wound of a certain depth and width and charged to be of a certain value, with many other refinements, including the allegation that the murderer had been "moved and instigated by the devil"—altogether an indictment of two or three pages for which a later statute, following the English form, has substituted an indictment for murder in three lines, with injury to none, and since then we have had many other statutes simplifying civil procedure and criminal trials.

In this case, three years after the man's house had been burned down and after a jury who heard 122 witnesses have found the sole fact at issue, that it was destroyed by the negligence of the defendant company, this case ought not to be sent back for a new trial upon a refinement as to shifting the burden of proof, or shifting the burden of the issue, or when it should be shifted, or when to "go forward" with proof and when and by whom this should be done, or any entanglement about the two presumptions, and whether they should carry the case to the jury and *res ipsa loquitur,* and as to the exact weight and effect to be given to any of these things.

With 122 witnesses the jury must have understood this case, and they have found, upon what they believe was the weight of the evidence, according to custom and practice of centuries, their verdict, and the judgment imposed thereon by the learned judge who tried this case should be sustained. The courts should not "bore with a gimlet," but cases should be tried and decided upon their merits.

If any judge has yielded to the "refinements," so called, which impede the administration of justice, it is no estoppel. He can overrule his own errors as we overruled the greatest of our predecessors on this Bench when they, in *Hoke v. Henderson,* 15 N. C., 1, made the mistake

of holding a public office was private property. After that decision had endured, to the great inconvenience of the public, for more than 70 years and been cited with approval in 60 cases, this Court overruled it.

All courts are fallible and often overrule their own errors. This is to their credit, not to their discredit. Justice only is eternal. Her only should we seek after and follow.