This is an action for wrongful death of plaintiff's husband George Craig, who was an engineer for the Suncrest Lumber Company, and running one of its local trains. He was killed by reason of the engine being derailed and turning over, crushing him to death. The codefendant, C. C. Fry, was superintendent in charge of the operation of the railroad where the intestate was working, and as such was in charge of the railroad engines, cars, and appliances used in connection with the operation of said railroad. The codefendant Hill was section foreman for the company, and was in charge of keeping up the track. The railroad in question was constructed and operated by the defendant company, who also owned a sawmill plant in connection therewith, used for hauling logs to said plant. At the time of the death of George Craig, the train had been taken to the upper end of the track and the cars were loaded with logs. The engineer, Craig, started the engine in the usual way, and after they had gone a short distance of approximately 200 yards, it started to run, and apparently got from under the control of the engineer. The cars attached to the engine had no brakes that could be applied by the engineer, but were intended to be controlled by the "hand brakes." When the train had apparently gotten from under the control of the engineer, both of the brakemen left their posts of duty and jumped, as did the firemen also, leaving the engineer, Craig, as the only *Page 591 
member of the train crew who stayed at his post. The grade of the railroad was very steep, and after the train started the engineer was seen to work his lever, which caused sand to go from the sand dome down on the rails for the purpose of checking the speed of the engine and cars. After the eleventh rail, the engineer was unable to get the sand to come down, but was seen to continue attempting to use the sand lever. There was plenty of sand in the sand dome, but for some reason the sand stopped. The engine ran twenty-seven rails after the sand began coming down on the rails before it jumped the tracks and turned over. The track at the point where the engine jumped the rails to the place where it started to run was very crooked. The rails were not bent so as to make a uniform curve, but the curves were made by (562) means of angles at the points and places where the rails came together. The road bed had never been surfaced or leveled, and the ties had been placed thereon very unevenly. At some places the ends of the ties practically came together at one end, but would be several feet apart at the other end, and the rails were so unevenly laid that first one side of the engine would be elevated and then the other side, causing the engine and train to rock.
The engine which Craig was running when he met his death was what the witnesses term "old flat bottom Climax." The engine was old and worn out when it came to the defendant company. It had a wood body and frame, and the wood, according to the evidence, was worn and rotten. It was further in the evidence that the brakes on the cars could not be tightened while the train was in motion. The brake-beams on the cars and engine were all made of wood, and the brakemen could not put on the brakes without going in between the cars. At the time of the accident, one of the brake-beams on one of the cars was broken and gone so that the brakes could not be applied to the wheels. The brakemen knew the brake-beams on the car were broken and gone, but this fact was unknown to the deceased. The cars were attached to each other and to the engine by the antiquated "pin and link" system, and the engineer had no means of applying the brakes on the cars, but was dependent on the brakemen to apply them by twisting them on by a hand wrench.
Verdict and judgment for the plaintiff. Appeal by the defendants.
There are exceptions to the evidence and charge, but they do not require discussion. The real defense is that the court overruled the motion to nonsuit as to the defendant company and Fry, the superintendent, and Hill, the section foreman. *Page 592 
Upon the well settled principle that on a motion for nonsuit the evidence must be taken in the most favorable light for the plaintiff, there was no error in refusing such motion. The road (track, cars, and equipment), upon the evidence, was a most "ramshackle" affair, and the train was unsupplied with the appliances required by law. The road bed was defective and dangerous, and the superintendent and section foreman, the codefendants, were negligent. The derailment itself was evidence of negligence. Hemphill v. R. R., 141 N.C. 487; Wright v. R. R., 127 N.C. 225. By the defective appliances and negligence of the officers the defendant made itself liable, C.S. 3466, 3467, and 3468, and these provisions apply to logging roads and tramroads. C.S. 3470.
No error.
Cited: S. v. Lumber Co., 186 N.C. 124; Craig v. Lumber Co., 189 N.C. 138;McKinish v. Lumber Co., 191 N.C. 837.