J. C. KINNEY v. THE NORTH CAROLINA RAILROAD COMPANY.

(Decided May 28, 1898.)

*Action for Damages—Master and Servant—Injury to Employee—Negligence—Evidence—Instructions—Fellow-Servant.*

1. The collision of two passenger trains in the day time and on the same track and with terrific force, is in itself evidence of negligence—*res ipsa loquitur.*

2. Where the evidence on a trial is essentially conflicting it is not error to refuse to charge that, if the jury believe the evidence, they should find for the party making the request.

3. An instruction charging the jury that, if they believed the evidence, they should find certain evidential facts to be true and that thereupon, certain other facts must be true, was properly refused as it is beyond the power of the Court to express an opinion on the evidence. (Section 413 of *The Code.*)

4. Where, in the trial of an action for damages for injuries to the plaintiff, an engineer of a train, resulting from the alleged negligence of the defendant company, the jury found that the plaintiff did not contribute to his own hurt, it was immaterial under the act abol-

122—61

---

---

ishing the doctrine of "fellow-servant." Chapter 56, (Private) Acts of 1897, which servant of the defendant was guilty of the negligence.

5. A lessor railroad company is liable for the negligent acts of its lessee while operating its own trains over the leased track.

CIVIL ACTION for damages for personal injuries to the plaintiff resulting from the alleged negligence of lessee of defendant company, tried before *McIver, J.*, and a jury at March Term, 1898, of DAVIDSON Superior Court. The facts appear in the opinion. There was a verdict for the plaintiff awarding him $20,000 damages and from the judgment thereon the defendant appealed.

*Messrs. F. C. Robbins* and *Long & Long*, for plaintiff.

*Messrs. George F. Bason* and *Charles Price*, for defendant (appellant).

DOUGLAS, J.: This is an action brought by the plaintiff to recover damages for personal injuries received in a collision at Harrisburg, N. C., on the 11th day of April, 1896.

The plaintiff was engineer of train No. 11, which was the local passenger train going south. He started from Danville on the morning of the 11th for Charlotte, leaving Danville some forty minutes late. When he reached Salisbury he received the following telegraphic order, from the office of W. B. Ryder, Superintendent at Charlotte, viz:

"SUPERINTENDENT'S OFFICE, }
            April 11th, 1897.      }

For Salisbury, C. & E. No. 11.

No. 36, Engine 319, will wait at Concord until 11:20 a. m., for No. 11, Engine 840. No. 11 will run by and back in.                              W. B. R.

Time received—10:22 a. m.

O. K.—Given at 10.24 a. m.

Conductor Lovel, Engineer J. C. Kinney, Train No. 11. Made complete at 10:24 a. m. Received by Crawford.                                        W. B. R."

When he reached Concord he received the following order:

"SUPERINTENDENT'S OFFICE, }
April 11th, 1897.        }

For Concord, C. & E., No. 11. No. 36, engine 319, will wait at Harrisburg until 11:15 a. m., for No. 11, engine 480.                                W. B. R.

Time received—10:47 a. m.

O. K.—Given at 10:48 a. m.

Conductor Lovel, Engineer J. C. Kinney, train No. 11. Made complete at 11.02 a. m.

Young—W. B. R."

Exact copies of the above orders were given to Tunstall, engineer. and Gentry, conductor of north-bound train No. 56, both orders being delivered at the same time, viz: at 10:48 on the same day.

The issues submitted with the answers thereto are as follows:

1. Was plaintiff injured by the negligence of defendant's lessee? Yes.

2. Did plaintiff by his negligence contribute to his injury? No.

3. Notwithstanding the contributory negligence of plaintiff, might the injury have been avoided by reasonable care on the part of defendant's lessee ? ——.

4. What damages has plaintiff sustained by reason of such injury? $20,000.

5. Is defendant company answerable for the negligence of the lessee company in this action? Yes.

There was judgment accordingly.

The plaintiff testified in part that he arrived with his train at the north switch at Harrisburg at 11:13½ a. m. by his watch; that he had sufficient time to have gotten on the switch before 11.15, and would have done so if the collision had not occurred; that when at the whistle post, one-half mile from the station, he shut off his engine and blew the station blow and slowed up so as to stop at the switch ; that he looked up and saw train No. 36 about a third of a mile from him coming towards him; that he could see only the top of the train on account of one or more box cars, and could not then tell how fast it was running; that when No 36 was within about 1200 feet of him, he saw that it was coming at the rate of 60 miles an hour; that he then saw there would be a collision; that he put on the air brakes to the full pressure, so as to make his train as steady as possible to resist the shock, fastened the throttle, shut and fastened the furnace door, and stepped off the engine, when he was immediately struck. There was much testimony on both sides, aggregating 159 printed pages besides the exhibits, which it is unnecessary and impracticable to recapitulate here. It is sufficient to say that there was, in many respects, a serious conflict of testimony, and that that conflict has been settled by the jury. In fact there is scarcely a naked question of law presented in the entire case. That two passenger trains in open daylight should come together with such terrific force, is evidence of negligence. If the doctrine of *res ipsa loquitur* ever applies, it would certainly do so in such a case. If the plaintiff has not been guilty of negligence, somebody else must have been, and for that negligence he would be entitled to recover. This was peculiarly a case for the jury, and their verdict, rendered under proper instructions, must be permitted to stand.

We see no substantial error in the charge of the court, or in the refusal to charge. The charge, with the special instructions given, sufficiently and fairly presented the case and the law relating thereto. Several of the instructions refused, such as Number 2, 3, and 5, though slightly different in form, amounted simply to telling the jury that, if they believed the evidence, they should find for the defendant. As the evidence was essentially conflicting, it was, of course, impossible for the jury to believe all of it, and therefore such instructions could not be given.

Other prayers, such as number 4, 9, and 11, in effect, instructed the jury that, if they believed the evidence, they would find certain evidential facts to be true, and that therefore other facts must be true, which is equally beyond the province of the court. For instance, prayer No. 4 requests the court to charge that "the *evidence shows* that nobody was misled or confused by the orders themselves nor by the manner of their delivery to the conductors and engineers of the two trains. The evidence further *shows* that the orders were perfectly safe, if they had been properly executed." In this connection the word "shows" is equivalent to the word "proves," and such an instruction would be clearly in violation of Section 413 of *The Code.*

This is essentially different from the court's instructing the jury that, if they believe the evidence, they will find a certain issue "yes" or "no," because such an instruction, which can be given only where there is no conflict in the testimony, leaves entirely to the jury the credibility of the witnesses, and simply says to them in effect that if they believed the facts testified to by the witnesses without contradiction, such facts would in law constitute negligence, or contributory neg-

ligence, as the case might be. The court cannot charge that a certain fact is proved, or, if proved, that it proves another fact. Compound and argumentative instructions are not favored by the courts, and no exception can be sustained to a refusal to charge, where any part of the prayer is erroneous.

There was no error in charging that the defendant would be responsible for the negligence of the engineer on train No. 36, as the act of February 23, 1897, printed as Chapter 56 of the Private Laws 1897, abolishes the doctrine of fellow-servant as far as railroads are concerned. Why this Act, which is essentially public in its nature, should have been printed among the Private Laws, we cannot say.

Whether the telegrams in question did actually deceive or confuse the engineer Tunstall was a question for the jury. That they were calculated to confuse, appears to us upon their face. But as the jury has found that the plaintiff was not guilty of contributory negligence, it makes no difference whether the negligence proximately causing the injury was that of Tunstall, the engineer, or Ryder, the Superintendent.

The exception of the defendant, as to the refusal to submit its issues, cannot be sustained. The only real difference between the issues tendered and submitted was in the first issue, as the third issue was not answered by the jury and the fifth issue was a conclusion of law. As to the first issue, that tendered by the defendant was as to its own negligence, while that of the plaintiff was as to the negligence of the defendant's lessee. The issue as submitted expressed the true contention, as the defendant is responsible for the acts of its lessee. *Norton* v. *Railroad*, at this term, and cases there cited    The judgment is                    Affirmed.