There was evidence on the part of plaintiff tending to show that in January, 1906, the intestate, engaged in his employment as one of a switching crew, was run over and fatally injured on the yard of defendant company, from which injury he soon thereafter died. D. H. Plott, a witness for plaintiff, among other things, testified in substance that on the night of the occurrence witness was conductor in charge of the switching crew of which deceased was then a member, and intestate, in the line of his employment, had thrown the switch and then took his position in front' of the slowly moving engine, stepped on the footboard, reached for the grab-iron and, not catching anything, fell back on the track and was run over and injured as stated. The witness further testified as follows: "After Jim Wright threw the switch he stepped about 3 or 4 feet from the outside between the two rails and stopped in front of the engine, between the rails, to get on. The engine was moving at the rate of between 2 and 3 miles an hour — not very fast. As we moved toward him he stepped on the footboard. I was on the (605) footboard, on the engineer's side — on the west side as the engine headed south. He stepped on the footboard and reached up as usual to catch the grab-iron or something, whatever he could. He did not *Page 447 
catch anything and fell backwards in front of the moving train, and was run over and both legs cut off. I don't know why Wright did not catch the grab-Iron. A switch engine usually has a grab-iron extending across over the top of end sill, 4 or 5 inches high. The grab-iron is usually on top of end sill, and by stopping on footboard you can catch grab-iron. The engine we were using that night had a flag at each corner. There was no grab-iron running across the front of that engine on top of end sill." The witness further said that this had been a road engine, changed for purposes of a switch engine by removing the cowcatcher and putting a footboard in front, and had no grab-iron, and that deceased at the time was acting in the line of his duty, and that brakemen in the performance of this duty properly took the position which was taken by the deceased on this occasion, and witness had done the same thing himself when engaged in this work.
A witness by the name of L. J. Snipes was asked as to the customary position and method of brakemen in that yard in performing the duty in which the deceased was engaged at the time, and said: "Always stand out in front, hold up one foot and let the footboard pick you up. Sometimes you stand on the rail, sometimes on the end of cross-tie, and sometimes on track, between rails. You catch from the end of tie if the footboard is in good condition. Grab-iron is supposed to be there to catch to." It further appeared that at the time deceased stepped on the footboard he had a lantern in one hand and a brake stick in the other, and the witness Snipes testified that both were supposed to be used by switchmen when engaged in this duty. Defendant offered no evidence.
On the issue as to contributory negligence the court charged the jury that the intestate was required to act with due care and circumspection, and left it to them to determine whether on the (606) facts and circumstances indicated the intestate was in the exercise of such care at the time; and declined to charge, as requested by defendant, that on the entire evidence, if believed, the intestate was guilty of contributory negligence.
There was a verdict for plaintiff, and defendant excepted and appealed.
After stating the facts: It was admitted on the argument that defendant company was negligent in failing to provide an engine properly equipped for the work in which the intestate was engaged, and it is urged for error that the court declined to charge as requested by *Page 448 
defendant on the issue as to contributory negligence, and this chiefly on the following statements appearing in the cross-examination of the plaintiff's witness, D. H. Plott:
"You made a statement immediately after this accident, did you not?
"A. Yes.
"Q. I will ask you if in this statement you did not say this: `The footboard was in good shape. This negro knew as well as I do that there were no grab-irons on this engine. I had warned him half a dozen times and told him to be careful.'
(Plaintiff objected to this question because he has offered no testimony to prove that his intestate was ignorant of the fact that his engine was not equipped with grab-irons, and because witness has not sworn that the plaintiff's intestate knew that there were no grab-irons on the engine, or that the had warned said intestate that there were none, and that he should be careful on that account. Objection overruled. Plaintiff excepts.)
(607) "A. Yes; I made that statement.
"Q. I will ask you now if you had not warned Wright numbers of times that there were no grab-irons on this engine and to be careful."
(Plaintiff objects. Objection overruled. Plaintiff excepts.)
"A. Yes; I had warned him.
"Q. That is the statement you made, is it not?
"A. Yes; that is my signature to it.
"Q. Did you not state at the time that `I told this negro at least a dozen times not to stand on the track and get on an engine as he did last night' ?"
(Plaintiff objects. Objection overruled. Plaintiff excepts.)
"A. Yes; I told him that. There was a footboard on the rear of this engine. We were going down to get out of the way of No. 35."
It is the rule with us that the cross-examination of an adversary's witness is not necessarily confined to matters about which the witness has testified on his examination in chief, but may extend to and include any matter relevant to the inquiry. S. v. Allen, 107 N.C., 805; Sawrey v.Murrill, 3 N.C. 397. This, too, seems to be the rule recognized and followed in the English courts, though there is much conflict of authority on the question in this country. An interesting discussion of the subject will be found in Professor Wigmore's work on Evidence, secs. 1885 to 1890, inclusive, in' which the author gives decided intimation that the doctrine as it obtains in this State is supported by the better reason. The evidence, then, must be considered and dealt with as if it had come from plaintiff's witness, and this though it was in no way responsive to the testimony given in chief and may tend only to support an affirmative *Page 449 
defense. We do not conclude, however, as claimed by defendant, that because this is true the testimony of the witness must be taken as importing absolute verity, nor that the plaintiff is thereby (608) precluded from insisting on any position which may contradict or in any way antagonize the statements made by his witness. While it is accepted doctrine that one who offers a witness "presents him as worthy of belief," and except, perhaps, where an examination is required by the law, as in the cases of subscribing witnesses to wills and deeds (Williams v.Walker, 2 Rich. Eq., 294; 46 Am. Dec., 53), a party will not be allowed to disparage the character or impeach the veracity of his own witness, nor to ask questions or offer evidence which has only these purposes in view, it is always open to a litigant to show that the facts are otherwise than `is testified to by his witness. S. v. Mace, 118 N.C. 1244; Chester v.Wilhelm, 111 N.C. 314. And this he may do, not only by the testimony of other witnesses, but from other statements of the same witness, and at times by the facts and attending circumstances of the occurrence itself, the res gestae. Becker v. Koch, 104 N.Y. 394.
In the present case, on his examination in chief, the witness Plott had stated in reference to this occurrence that "he stepped on the footboard and leached up as usual to catch the grab-iron or something, whatever he could." And again: "I do not know why Wright did not catch the grab-iron. A switch engine usually has a grab-iron extended across the top or end sill, 4 or 5 inches high." The statement brought out in the cross-examination, as we interpret it, nowhere intimates that any present warning was given by the witness that the engine was defective. The testimony is to the effect that at some previous time or times such warning bad been given and the intestate directed to be careful, and from the facts attending the occurrence, as given by the witness in his examination in chief, the jury might have concluded that the witness, in his written statement, had been mistaken as to the engine, or that it was so long before the intestate could have reasonably inferred that the defect had been remedied, or they may have determined to (609) reject it altogether as unworthy of credit. The credibility of testimony is for the jury, and it is theirs to accept or reject all or any part of the witness's testimony, as it may convey to their minds the impress of truth. S. v. Hill. 141 N.C. 769; S. v. Green, 134 N.C. 658.
Again, while the statements made in this cross-examination are evidence on the issue as to contributory negligence, and were so submitted to the jury as a separate and complete defense, which the defendant's position seeks to make them, these statements chiefly derive what force and significance they may have from the fact that they tend to establish that the intestate at the time of the occurrence was acting in disobedience *Page 450 
of orders which the conductor at some previous time, and when acting as vice-principal, had given for the employees' protection. It does not clearly appear from the evidence that the conductor, when the alleged previous order and warnings were given, was then acting as vice-principal towards the intestate or giving an order to govern his future conduct; but if this be conceded, and the directions and warnings given by the conductor at some previous time should be allowed the force and effect of a rule of the company made for the employees' protection, it should be subject to the same limitation as a rule. It must be an order given and received with the expectation and intent that it should be observed; and, as in the case of rules, it was open to the parties to show that no such intent existed — that it was simply talk, and, by the attitude of the parties and their conduct concerning it, that the order as a rule had been waived or abrogated. In that aspect the statements made in this cross-examination were fairly submitted to the jury in the full and comprehensive charge of the court.
Among other things said by the court in reference to these orders having the force and effect of rules made by the company, the judge below said: "Now, I give you that instruction, gentlemen of the jury, (610) subject to the modification that the effect of an order given by Plott (who, if you believe the evidence, was a superior of the plaintiff's intestate) was the same as a rule promulgated by the railroad company itself, and that such an order could be waived by the defendant as well as a rule made by the railroad company itself could be waived.
"The law is that the violation of a known rule of the company made for an employee's protection and safety, when the proximate cause of such employee's injury, will usually bar a recovery. This is only true, however, of a rule which is alive and in force, and does not obtain where a rule is habitually violated, to the knowledge of the employer or of those who stand toward the employer in the position of vice-principal, or when a rule has been violated so frequently and openly and for such a length of time that the employer could by the use of ordinary care have ascertained its nonobservance."
This was a correct statement of the law as to the effect of this order of the vice-principal having the force and effect of a rule of defendant company, and the facts in evidence fully sustain the verdict rendered under the charge. While the conductor may at some previous time have warned the intestate as to the defect in the engine and the position taken by the intestate in getting aboard, the evidence shows that the intestate on this occasion acted as all the other hands engaged in this business were accustomed to act, including the conductor himself; and in support of this position it further appeared that in the present instance the *Page 451 
conductor himself was standing on the footboard in full view and gave no Warning and made no protest. The intestate might have concluded that his superior's previous speech concerning this work was not expected or intended to be obeyed.
The facts of this case are in many respects similar to those presented and considered in Biles v. R. R., 139 N.C. 528; Coley v. R. R.,128 N.C. 534; and a correct application of the principles declared in those decisions will sustain and justify the recovery had by (611) plaintiff in the present action.
No error.
Cited: Crawford v. R. R., 150 N.C. 623; Lynch v. Johnson, 171 N.C. 623.