### JOSEPHINE F. ADAMS v. KINSTON AND CAROLINA RAILROAD AND LUMBER COMPANY.

(Filed 4 October, 1911.)

1. **Railroads—Collision—Evidence—Presumptions.**

    Evidence that plaintiff's intestate, an employee of defendant railroad company, was killed in a collision between two of defendant's trains, is sufficient upon the question of defendant's negligence to take the case to the jury, the fact of the collision raising a presumption of negligence.

2. **Same—Trains Without Light or Guard.**

    Evidence that plaintiff's intestate, an employee on defendant's train, was killed in a collision with another of defendant's trains, which occurred before daylight while the train was running backward, with no man or light on the rear car, is evidence of defendant's negligence beyond the presumption of negligence raised by the mere fact that he was killed in a collision.

3. **Railroads—Master and Servant—Disobedience of Orders—Evidence—Questions for Jury.**

    It being material to the issue upon defendant's negligence in an action for damages for the wrongful killing of plaintiff's intestate, as to whether the intestate, an employee of defendant, at the time complained of, was acting in disobedience to defendant's orders, or whether he was acting under the orders of one who had no authority from defendant to give them, the questions are for the jury under conflicting evidence.

APPEAL from *Peebles, J.,* at March Term, 1911, of LENOIR.

This action is to recover damages on account of the death of the plaintiff's intestate, which it is alleged was caused by the negligence of the defendant.

The defendant denies negligence, and alleges that the intestate was guilty of contributory negligence.

The intestate was killed on 24 January, 1910, which was on Monday, while on the train of the defendant, by a collision between the train and two box cars, which had been left on the track of the defendant, on the preceding Saturday evening.

There was evidence that the intestate was foreman of the track of the defendant, and that he was going out on the train to work on the track.

The plaintiff contended that he was on the train by direction of one Weeks, a representative of the defendant, and that he knew nothing of the two cars on the track.

The defendant contended that Weeks had no authority to act for it; that the intestate had been ordered by one Hayes to go out Monday morning with the regular engineer, Sanderson; that he disobeyed this order and went with the fireman, one Davis; that the intestate was in charge of the train on Monday and on the Saturday preceding, and that he knew the cars were on the track.

At the conclusion of the evidence the defendant moved for judgment of nonsuit, which was denied, and the defendant excepted.

There was a verdict and judgment for the plaintiff, and the defendant excepted and appealed.

*E. R. Wooten, McLean, Varser & McLean, and Loftin & Dawson for plaintiff.*

*· G. V. Cowper and Rouse & Land for defendant.*

ALLEN, J. There is ample evidence of negligence on the part of the defendant. The collision raises a presumption of negligence. *Kinney v. R. R.,* 122 N. C., 961; *Marcom v. R. R.,* 126 N. C., 200; *Wright v. R. R.,* 127 N. C., 229; *Stewart v. R. R.,* 137 N. C., 689.

In addition to this presumption, there is evidence that the train was running backward, before daylight, with no man or light on the rear car, which is evidence of negligence.

The defendant says, however, that these principles do not militate against its contention, and that, upon the whole evidence, a judgment of nonsuit ought to have been entered.

Its counsel says in his brief:

"The vital questions, therefore, arising in this appeal, are:

"1. Did Weeks assume authority to act as conductor on the morning in question?

"2. If so, did the defendant authorize him to so act or knowingly acquiesce in his assumption of authority to such an extent as to ratify what he did and become responsible for his conduct?

"3.   Even granting, for the sake of argument, that the first and second propositions could be answered affirmatively, then as a matter of law could Adams, knowing that Hayes was superintendent and was the representative of the defendant who had employed him, disobey the express and specific orders of Hayes, a superior officer, in order to carry out the orders of Weeks, admittedly an inferior to Hayes (even if it could be said that he had any connection with the defendant)?

"4.   It appearing in the plaintiff's own testimony that Adams knew Weeks was not conductor on the morning of the injury, the testimony of the plaintiff showing that one Singleton had been employed the Friday before and that Weeks was no longer assuming to hold the position, could said Adams proceed to obey Weeks' orders except at his own peril?"

If we understood the evidence as the defendant's counsel construes it, we might agree with his conclusion; but we do not.

In our opinion, there is evidence that Weeks had authority to control the movement of the train, and that the intestate was not acting in violation of directions given him by Hayes.

There is also evidence that the intestate did not know that the cars were on the track.

A witness for the plaintiff, C. C. Bell, testifies that Weeks was acting as assistant conductor and manager of the defendant; that he gave instructions to Davis, who was the acting engineer, as to the movements of the train; that Davis acted on his orders; that Weeks had been acting as conductor of the train; that the train was running backward at the time of the collision, with no light or man on the rear; and that he was on the train with the intestate on Saturday, and that the intestate was at that time making up his pay-rolls, and did not know the cars were left on the track.   He also testifies to being present on Sunday and hearing the conversation between the superintendent, Hayes, and the intestate, as follows:

Q.   Where was it Mr. Hayes gave you instructions on Sunday?   A.   At the office.

Q.   Who else?   A.   Mr. Adams and myself.

Q.   You say Mr. Hayes told Mr. Adams to take Davis as engineer?   A.   No, sir; I didn't say so.

Q. What time was this?   A. Somewhere between 11 and 12 o'clock.

Q. Why did you go there on Sunday?   A. It was the usual thing.   Mr. Adams would go down on Sunday between 11 and 12 o'clock to get orders for Monday; that was Mr. Hayes' order, to go down on Sunday and get orders for Monday.

The regular engineer was sick, and for this reason did not run the train on Monday, and Weeks knew this.

Another witness testified he had heard Weeks give orders as to the running of the trains, in the presence of Hayes, without objection or protest. There was evidence on the part of the defendant directly contradicting the evidence of the plaintiff, but we cannot pass on this conflict of evidence, and for the purpose of the motion for nonsuit must accept the evidence of the plaintiff to be true.

Upon a review of the record, we find

No error.