O. T. BELSHE v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 17 October, 1923.)

**1. Railroads—Carriers—Negligence—Safe Place to Work—Rule of Company.**

It is required of railroad companies to provide reasonably safe conditions under which the employees on their freight or inferior trains are required to do their dangerous work; and should a rule of the company be in conflict with this rule of law, the former is to that extent ineffectual.

**2. Same.**

In this action by an employee to recover damages against a railroad company for negligently injuring him while serving as a lookout on the caboose car of a backing train, at night, in a town, by running into a car left unguarded on the main-line track, and without signals, there was evidence tending to show that the train on which the plaintiff was employed was regarded as an "inferior" train, and a rule of the defendant was introduced in evidence to the effect that the usual method of lights and signals were not required to give warning, under the circumstances, to trains of this character: *Held*, the question of defendant's actionable negligence in failing to exercise reasonable care to provide its employee a proper place, or reasonably safe conditions under which to do his work, was properly a question for the jury to determine.

**3. Railroads — Carriers — Rules of Company — Custom — Abrogation of Rules.**

A rule of a railroad company in regard to not displaying lights upon a freight car left at night on the main-line track of a station, under certain conditions, may become abrogated by a long-continued custom to display red lights under these conditions.

**4. Evidence—Character—Expert Witnesses—Skill.**

Where a physician, a witness for plaintiff on the trial in a personal-injury case, has been attacked, on cross-examination of the defendant, as to his truthfulness and skill, it is competent for the plaintiff to prove his general character and his ability as a physician and surgeon by other medical expert witnesses.

**5. Instructions—Damages—Negligence—Appeal and Error—Harmless Error.**

In an action against a railroad company to recover damages for a personal injury, a charge otherwise unexceptionable will not be held for reversible error, to the defendant's prejudice, for the use of the words, upon the measure of damages, allowing a recovery, "for the reasonable present value of the diminished earning capacity forever," it being the apparent endeavor of the judge, taken in connection with other portions of the charge, to impress upon the jury that plaintiff could not recover for the entire difference caused by the injury, but only the present value of such difference so caused, it appearing from the charge, considered as a whole, that any juror of average intelligence must have understood the application of the proper instructions, and that recovery was not permitted for all time to come, or that the injury was permanent, or otherwise.

APPEAL by defendant from *Cranmer, J.,* at March Term, 1923, of NASH.

Civil action. The action is to recover damages for physical injuries caused by alleged negligence of defendant company to plaintiff, on 26 October, 1921, while he was employed as brakeman, engaged in taking a train from Norlina, N. C., to Petersburg, Va.

There were facts in evidence on part of plaintiff tending to show that on the night of 25 or 26 October, 1921, plaintiff, an employee of defendant as brakeman, was sent with a train from Norlina, N. C., to Petersburg, Va., for the purpose of bringing back a full train of cars from Petersburg. The others of the crew, with plaintiff, at the time, being the engineer, J. J. Horton; a fireman, Holt; and C. M. Barkley, the conductor. That at Alberta, a point south of Petersburg, by orders of the conductor, the engine and tanks were turned around on a "Y," so as to leave the engine headed south for the return trip, there being no facilities of this kind at Petersburg, and from Alberta to Petersburg the engine was at the rear, pushing the caboose before it towards Petersburg. That as plaintiff's train went into the yard at Petersburg on the main track, plaintiff being in the front door of the caboose, with a white lantern, as directed, looking out for obstructions on the track, and the conductor in the cupola of the caboose, having an arrangement by which he could apply the brakes on call, plaintiff's train ran into a heavy gondola car, loaded with gravel, standing on the main line, without lights or signals of any kind. The caboose in which plaintiff was placed was torn up, and plaintiff received painful and permanent injuries, from which he still suffers. That plaintiff's train, on entering the yard, was moving at the rate of four or five miles an hour, and that it was the custom of the railroad whenever a car was left standing on the main line to have red lights on the rear, or to place torpedoes, and that there were neither for that train at the time of the collision. Speaking more directly to the occurrence and the conditions presented, plaintiff testified in part as follows:

"In entering the yard at Petersburg the track was rather crooked at that point, and on that was the cars. My train was being operated on the main line of the Seaboard Air Line. The effect that had upon our view of the main line was that it darkened the location of the cars that were there. On entering the yard I was in the cupola until I came to the yard board. I was in the door, with a lantern in my hand, and one on either side of the door. I was there to keep a lookout for obstructions on the track. While I was keeping this lookout we got to that A. C. L. crossing, and there is an overhead bridge, and I looked at the scale track, and when I come to the scale track it was mighty dark. I

could not swear what it was, but I saw something big in front of me; it appeared to be a gondola car, loaded with gravel, standing on the main line, and there was no lights or any person near; there was no signal of any kind. When I observed that there was a gondola car, loaded with gravel, without lights, I hollered for the conductor to pull air. The conductor had his hand on the valve, and you pull air and that sets the brakes. As quick as I looked I said, 'Pull air, Si'—he was the conductor, and that is what I called him. The caboose was torn up and made kindling-wood of it, and it balled me around in there for a while. I had no notice of the existence of that car—the gondola car on the main line at Petersburg—until I saw it there that night. When the collision occurred I was rolled up in the splinters, and I got up in the air 15 feet, and when it stopped rolling I fell from the top of that pile of mess, 12 or 15 feet, and it was an awful fall."

There was further evidence as to the extent and nature of the injuries received at the time.

On the part of defendant it was contended that there was no breach of duty shown, and certain rules of the company were introduced tending to show that the train standing on the yard at the time was not required to provide for the usual protection as against an inferior train, such as that on which plaintiff was working. And it was claimed that plaintiff, and those who were with him at the time of the occurrence, were guilty of contributory negligence in various particulars as to the positions they occupied and as to the manner in which they entered the yard, and that plaintiff had assumed the risks of conditions presented. There was further evidence tending to show that the injuries received by plaintiff were not at all of the seriousness claimed by him, but that they were comparatively trivial, and that he had long since entirely recovered. On issues submitted, the jury rendered the following verdict:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: 'Yes.'

"2. Did the plaintiff, by his own negligence, contribute to his injury, as alleged in the answer? Answer: 'No.'

"3. Did the plaintiff assume the risk of injury, as alleged in the answer? Answer: 'No.'

"4. What damages, if any, is plaintiff entitled to recover? Answer: '$10,000.'"

Judgment for plaintiff, and defendant excepted and appealed.

*R. L. McMillan, R. N. Simms, and Douglass & Douglass for plaintiff.*
*Murray Allen for defendant.*

HOKE, J.  The jury having accepted plaintiff's version of the occurrence, there is ample evidence to support the verdict, and we find no valid reason for disturbing the results of the trial.

Defendant's motion for nonsuit, on the ground that no rule of the company required the train on the yard at the time to put out or establish protection as against an inferior train, and, therefore, no breach of duty is shown, was properly overruled.  True, the rule chiefly relied upon for this position, as we understand it, No. 658½ D, seems to relieve defendant's train on the yard at the time from putting out the full and specific protection required by new rule 99, but there is doubt if this is capable of the construction that the train referred to is relieved of putting out any notice whatever of its presence on the yard at the time.  And on the facts presented in this record, if defendant's rules are susceptible of such interpretation, it would seem that the rules themselves might be held to constitute or countenance a breach of duty on the part of defendant, in that the company did not, in the exercise of reasonable care, provide for its employees a proper place or reasonably safe conditions under which to do their work.  *Chicago, etc. R. R. v. Wright,* 239 U. S., 548-550.  In that case, one where a switching engine had collided with an extra on the yard of defendant company, causing the injury complained of, the negligence imputed being an excessive rate of speed under conditions presented, the Court, among other things, said: "While doubting that the rules, rightly understood, permitted the switching crew to proceed at a speed which obviously endangered the safety of the extra which they know might be coming through the cut, on the same track, we agree that if this were permitted by the rules, they were in that respect unreasonable and void."

Apart from this, there is evidence on part of plaintiff to the effect that it was the custom for the company to have either red lights in the rear or torpedoes put out, if cars were left standing on the main line, and if this should be accepted by the jury, our decisions hold that such a custom known to exist by the company, or existent and followed for such a length of time that the company should have taken note of it, may have the force and effect of abrogating any rule to the contrary. *Tisdale v. Tanning Co.,* 185 N. C., 497, citing *Smith v. R. R.,* 147 N. C., 603; *Biles v. R. R.,* 139 N. C., 528.

Defendant excepts further because plaintiff was allowed to ask Dr. Caveness and Dr. Horton, both professional experts, as to the general character of plaintiff's witness, Dr. Glascock, as physician and surgeon. Dr. Glascock himself was examined as an expert witness for plaintiff, and had given an opinion as to the nature and extent of plaintiff's injuries, ascertained from an examination in the line of professional

duty, and in this respect had been made the subject of aggressive attack by defendant, both as to his character for truthfulness and professional skill, and in such case it is eminently right that plaintiff should be allowed to support and strengthen his witness in both respects from the testimony of other witnesses who were themselves qualified to speak to the question. Authority with us also is in support of his Honor's ruling. *Alley v. Pipe Co.,* 159 N. C., 327, citing among other cases *Lamb v. Littman,* 132 N. C., 978; *R. R. v. Jewell,* 46 Ill., 99; Wigmore on Evidence, sec. 1894.

Defendant further and very earnestly insists that prejudicial error was committed in his Honor's charge on the question of damages, the portion excepted to being as follows: "There is a rule by which you will be guided if you should reach the fourth issue, and that rule is as follows: The plaintiff would be entitled, if at all, to recover a fair and reasonable sum for the pain and suffering he has undergone by reason of the defendant's negligence, and for a fair recompense for loss of what he could otherwise have earned in his trade, and has been deprived of his capacity for earning by way of defect, for his expenses for medical attention, and the reasonable present value of his diminished earning capacity forever in the future, and not the difference between what he would be able to earn in the future, but for such injury, and such sum as he would be able to earn in his present condition. Or, to state it differently, the estimate should be based upon the present value of the difference between plaintiff's earning capacity, and not the total difference caused by the injury."

The objection being more especially to the clause, "for the reasonable present value of the diminished earning capacity forever," but in our opinion the exception cannot be sustained. His Honor, in this particular portion of the charge, was endeavoring to impress upon the jury the position that plaintiff could not recover for the entire difference caused by the injury, but only the present value of such difference—a position that is in accord with our decisions on the subject, and in this respect makes in favor of defendant. The expression, "the present value of his diminished earning capacity forever in the future," clearly did not mean for all time to come, nor to indicate that the injury was permanent or otherwise, but merely that the present value of diminished earning capacity for all future time to the extent affected by the injury complained of, and any juror of fair average intelligence must have so understood it. The position is put beyond question by the closing clause, "Or, to state it differently, the estimate should be based upon the present value of the difference between plaintiff's earning capacity, and not the total difference *caused by the injury.*" Considering the charge as a whole, and even the portion of it excepted to, the jury, in the ascertain-

ment of damages, have been instructed in substantial accord with our decisions on the subject, and in a manner that gives defendant no just ground of complaint. *Ledford v. Lumber Co.,* 183 N. C., 614; *Johnson v. R. R.,* 163 N. C., 451. On careful consideration, we find no reversible error in the record, and the judgment of the court below is affirmed.

No error.