J. S. R. HINNANT, ADMINISTRATOR OF W. T. HINNANT, v. TIDEWATER POWER COMPANY.

(Filed 27 February, 1924.)

1. **Railroads — Carriers — Street Railways—Employer and Employee — Negligence — Res Ipsa Loquitur — Collisions — Evidence—Questions for Jury—Statutes.**

In an action by the administrator of a deceased employee of an electric railway company to recover for his intestate's negligent death, the fact that it was caused by a head-on collision on defendant railroad company's trestle, in broad daylight, with another of its cars, is some evidence that the defendant's actionable and continuing negligence proximately caused the employee's death, and, under the doctrine of *res ipsa loquitur*, raises the issue for the determination of the jury as to whether the defendant's negligence proximately caused the death, though the intestate's contributory negligence may also have been one of the proximate causes thereof. C. S., 160, 3465, 3466, 3467, 3468.

2. **Same—Presumptions—Prima Facie Case—Burden of Proof.**

In an action by the administrator to recover damages for the negligent death of his intestate, an employee of the defendant railroad company, the fact that it was caused in broad daylight by a collision with another of defendant's trains having the right of way, raises a *prima facie* case of defendant's actionable negligence sufficient to sustain a verdict in plaintiff's favor, the burden of proof remaining with the plaintiff, though subject to the defendant's evidence in rebuttal; and an instruction to this effect is sustained on the evidence in this case.

3. **Same—Continuing Negligence—Proximate Cause—Rules.**

In an action against a street railway company to recover for the negligent death of the plaintiff's intestate wherein it was admitted that the death resulted from a head-on collision in broad daylight with another of defendant's trains on its trestle, and there is evidence tending to show there was continuing negligence on the defendant's part in having its motorman on the other car to continue to run on its right-of-way schedule under the circumstances, and also on the part of the intestate motorman in violating the defendant's rule by talking to another employee on the platform with him, the question of proximate cause cannot be determined as a matter of law in defendant's favor on its motion as of non-

suit, but leaves the issues as to negligence and contributory negligence for the jury to determine, under proper instructions as to proximate cause, under the rule of the prudent man.

4. **Same—Contributory Negligence—Comparative Negligence—Damages— Statutes.**

In an action against a railroad company to recover for the negligent death of plaintiff's intestate, an employee engaged at the time in the course of his employment, as such employee, contributory negligence under the provisions of our statute is not a complete bar to the plaintiff's right of recovery, but is considered by the jury only in diminution of his damages. C. S., 3467.

STACY, J., took no part in the consideration or decision of this appeal.

APPEAL by defendant from *Sinclair, J.,* and a jury, at March Term, 1923, of NEW HANOVER.

This is a civil action brought by J. S. R. Hinnant, administrator of W. T. Hinnant, for damages against the Tidewater Power Company. W. T. Hinnant was a motorman and employed by the defendant corporation that operated an electric suburban line of railroads from the city of Wilmington to Wrightsville Beach, N. C. He was a motorman on a passenger train running between Wilmington and Wrightsville Beach. The contention of the plaintiff is that his intestate was the motorman on a passenger train which was run and operated upon a regular schedule time promulgated by defendant company, and, in the absence of special orders to the contrary, the passenger trains were under the rules of the company given the right of way over all other cars on the line. That at the time plaintiff's intestate was killed, on 25 August, 1920, no special order had been issued granting to any other train the right of way over the train plaintiff's intestate was operating as motorman. That it was the duty of defendant to keep its track clear so that the train plaintiff's intestate was operating would have an unobstructed way and be able to make the schedule required by the rules of the defendant. That all other trains were required to clear the track for at least five minutes ahead of the schedule upon which plaintiff's intestate was running. That the defendant promulgated certain rules in regard to operating its trains. That on 25 August, 1920, the defendant negligently and carelessly, and in utter disregard of the rights of plaintiff's intestate and his safety, and in violation of the rules of the company, ran or caused to be run a freight or baggage car out and upon the main line upon the schedule time of the train, which the plaintiff's intestate was running. That it was run at a high rate of speed and in head-on collision with the plaintiff's intestate's train on a long high trestle, in which collision plaintiff's intestate was killed.

That defendant negligently and carelessly employed as motorman on the freight or baggage car a man whom it knew or should have known

was incompetent and unfit to be trusted in such a position, and at the time the baggage car was run out on the main line, and at the time of the collision, it was being operated by an incompetent colored man, a coemployee of the motorman. That the motorman and the colored employee negligently failed to keep a proper lookout. If a proper lookout had been kept they would have seen plaintiff's intestate's train coming upon its schedule time and could have stopped the baggage car, reversed it, and gotten out of the way and given timely signals to plaintiff's intestate in time to have prevented the collision and killing of plaintiff's intestate. That some of defendant's other employees on the train run by plaintiff's intestate did negligently and carelessly violate the rules of the company by coming out on the platform when plaintiff's intestate was performing his duty and indulge in conduct which distracted his attention, and that such acts were one of the contributing proximate causes of plaintiff's intestate being killed.

The defendant contends that at the time of the collision plaintiff's intestate was not running on regular schedule time, but was proceeding from Wilmington to Wrightsville Beach for the purpose of taking up his schedule or regular run, and his train was not entitled to the rights and privileges of a regular passenger train running on regular time, as it was the duty of such a train to get out of the way of regular trains.

The defendant admits that rules were promulgated and charges the plaintiff's intestate with violating some of them, and alleges that it was as much plaintiff's intestate's duty to observe these rules as it was the duty of any other employee, and charges that the violation by plaintiff's intestate of the rules was the proximate cause of the collision and injury to him.

The defendant denies that it employed an unfit and incompetent motorman on the baggage car. "The defendant admits that another employee went out onto the platform and he and plaintiff's intestate engaged in conversation, contrary to the rules of the company. The defendant says that the rules of the company, with which the plaintiff's intestate was perfectly familiar, made the motorman responsible for the safe operation of the car, and his allowing any one else to engage him in conversation so as to distract his attention was gross negligence and the proximate cause of the injury."

The defendant denies all liability and submits that the collision and accident referred to in the complaint was due to the negligence of the plaintiff's intestate.

For a further defense the defendant alleges:

"That the motorman had been in the employ of the defendant company for many years and was perfectly familiar with the rules and

regulations of the defendant company; that he had run on this route and on passenger trains for years; that he knew that the defendant operated a freight car which in the morning took the garbage and other refuse stuff from the beach for the purpose of cleaning up, and that said car was frequently partly unloaded on the fill in the sound between Harbor Island and Wrightsville Sound; that he knew that this car left the beach for the mainland somewhere between six and six-thirty, and he usually met it at Wrightsville and had not done so; that he was not running on schedule time but was taking the train to Wrightsville Beach to pick up his schedule and was compelled to get out of the way of trains running on schedule time, and to that end had discretion as to the manner of running; that he came to Wrightsville and the freight car was coming from Harbor Island, and it was much more than half way across the trestle, and the motorman of the freight car blew his signal many times but plaintiff's intestate, instead of being attentive to his duty and looking down the track, as it was his plain duty to do, when he could have seen the freight train approaching, as it was a perfectly clear day and in broad daylight, was engaged in laughing and talking with some one else, and this inattention, disobedience of rules and negligence on the part of the plaintiff's intestate was the sole proximate cause of the accident or contributed proximately to it."

The issues submitted to the jury and their answers are as follows:

"1. Was the plaintiff's intestate killed by the negligence of the defendant, Tidewater Power Company, as alleged in the complaint? Answer: Yes.

"2. Was the plaintiff's intestate, W. T. Hinnant, guilty of contributory negligence, as alleged in the defendant's answer? Answer: Yes.

"3. What damages, if any, is the plaintiff entitled to recover? Answer: $12,000."

The court below rendered judgment on the verdict for plaintiff, and defendant excepted, assigned error, and appealed to this Court.

There are numerous exceptions and assignments of error in the record. We will consider the ones material to this case and other pertinent facts and contentions in the opinion.

*E. K. Bryan for plaintiff.*
*Rountree & Carr for defendant.*

CLARKSON, J. The statutory law in reference to actions of this character is as follows:

C. S., 160. "When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured party

had lived, have entitled him to an action for damages therefor, the person or corporation that would have been so liable, and his or their executors, administrators, collectors or successors shall be liable to an action for damages, to be brought within one year after such death, by the executor, administrator or collector of the decedent; and this notwithstanding the death, and although the wrongful act, neglect or default causing the death amounts in law to a felony. The amount recovered in such action is not liable to be applied as assets, in the payment of debts or legacies, but shall be disposed of as provided in this chapter for the distribution of personal property in case of intestacy."

C. S., 3465. "Any servant or employee of any railroad .company operating in this State who shall suffer injury to his person, or the personal representative of any such servant or employee who shall have suffered death in the course of his services or employment with such company, by the negligence, carelessness or incompetency of any other servant, employee, or agent of the company, or by any defect in the machinery, ways or appliances of the company, shall be entitled to maintain an action against such company. Any contract or agreement, express or implied, made by any employee of such company to waive the benefit of this section shall be null and void."

C. S., 3466. "Every common carrier by railroad shall be liable in damages to any person suffering injury while he is employed by such carrier, or in case of the death of such employee, to his or her personal representative, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engine, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

C. S., 3467. "In all actions hereafter brought against any common carrier by railroad to recover damages for personal injury to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided, however,* that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

C. S., 3468. "In any action brought against any common carrier under or by virtue of any of the provisions of this article to recover damages for injuries to, or the death of any of its employees, such

HINNANT v. POWER CO.

employee shall not be held to have assumed the risk of his employment in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee, or the death or injury was caused by negligence."

The defendant's counsel, in their able and analytical brief, say, "After a more careful examination, we think the salient points which we desire to present to the Court may be treated under a comparatively few heads."

The first position taken by defendant in its argument here and brief is that the plaintiff—on all the evidence—should have been nonsuited. The defendant contends "What is negligence is a question of law, and when the facts are admitted or established is for the Court." Burdick on Torts (2 ed.), 429. In *Russell v. R. R.,* 118 N. C., 1111, it is stated thus: "Where the facts are undisputed and but a single inference can be drawn from them, it is the exclusive duty of the Court to determine whether the injury has been caused by the negligence of one or the concurrent negligence of both of the parties." *Stewart v. R. R.,* 137 N. C., 690; *Ramsbottom v. R. R.,* 138 N. C., 41; *Taylor v. Stewart,* 172 N. C., 205; *Taylor v. Lumber Co.,* 173 N. C., 112. We think this contention as to the law correct, but in the instant case there are certain facts tending to show negligence on the part of defendant that are not admitted or established. Upon a motion to nonsuit, the evidence in the case is construed in the light most favorable to the plaintiff. At the close of plaintiff's testimony defendant moved to nonsuit, and this motion was renewed at the close of all the testimony. We think the court below was correct in refusing to nonsuit plaintiff. *Nowell v. Basnight,* 185 N. C., 148.

It is undisputed in the pleadings or evidence in the case that plaintiff's intestate was an employee of defendant, a motorman running an electric passenger train from Wilmington to Wrightsville Beach, and was killed in a head-on collision (died the next morning) with a baggage or garbage car of defendant, operated by one Ed Allen, on the trestle between Harbor Island and Wrightsville Station, about 6:30 o'clock on the morning of 25 August, 1920.

In *Kinney v. R. R.,* 122 N. C., 964, it is said: "That two passenger trains in open daylight should come together with such terrific force is evidence of negligence. If the doctrine of *res ipsa loquitur* ever applies, it would certainly do so in such a case. . . . This was peculiarly a case for the jury."

We think the court below in the charge stated the law correctly. "It is the law in North Carolina that where it has been proved or is admitted that the death of an employee of a railroad is the result of a head-on collision in the daytime, the law itself raises a presumption

that the death was caused by the negligence of the defendant. That presumption, however, is not an irrebuttable presumption. It is a presumption which may be rebutted by the facts and circumstances as they appear in the evidence, if the jury find that the facts and circumstances actually do rebut that presumption which arises by law. The fact that there was a head-on collision between two trains in the daytime makes what the law calls a *prima facie* case, from which the plaintiff would be entitled to recover if nothing else appeared." *McDowell v. R. R.,* 186 N. C., 571; *Saunders v. R. R.,* 185 N. C., 290; *Harris v. Mangum,* 183 N. C., 235; *White v. Hines,* 182 N. C., 288; *R. R. v. R. R.,* 157 N. C., 369; *Hemphill v. Lumber Co.,* 141 N. C., 488; *Stewart v. R. R., supra,* 689; *Wright v. R. R.,* 127 N. C., 229. This doctrine is fully discussed in 4 Labatt's Master and Servant (2 ed.), sec. 1601. See note 10.

We do not think that defendant can complain. The court below, at the request of the defendant, gave the following instruction: "As a general rule, injury to passengers or employees from a collision by a common carrier gives rise to *prima facie* evidence of negligence. The doctrine or principle of *res ipsa loquitur*—that is a Latin expression, meaning the thing speaks for itself—applies, but this only means that proof, or admission, of the collision warrants the inference of negligence—that is, it furnishes circumstantial evidence of negligence to be weighed, not necessarily to be accepted as sufficient; it calls for explanation or rebuttal, not necessarily that it requires it. It makes a case to be decided by the jury, but not such a case as forestalls the verdict. So here the plaintiff having charged, and the defendant having admitted, that the injury to plaintiff's intestate was caused by a collision between the car which was driven by plaintiff's intestate and the car operated by Allen, that is evidence from which the jury might infer—if they felt that the evidence justifies it—that the defendant was guilty of negligence, if nothing else appears. But if the circumstances of the collision are shown, and from these circumstances it appears that the injury was caused, not by the defendant, but by the negligent act of the plaintiff's intestate himself, then the *prima facie* case arising from the collision is rebutted, and the jury should answer the first issue 'No.' The presumption of negligence herein considered is, of course, a rebuttable presumption. It imports merely that the plaintiff has made out a *prima facie* case, which entitles him to a favorable finding, unless the defendant introduces evidence to meet and offset its effect. And, of course, where all the facts attending the injury are disclosed by the evidence, and nothing is left to inference, no presumption can be indulged; the doctrine of *res ipsa loquitur* would then have no application."

On the question of negligence and proximate cause, the court below charged the jury as follows: "The question is: Was the plaintiff's intestate killed by the negligence of the defendant? Before the plaintiff can recover in this action, you must find by the greater weight of the evidence not only that he was injured and died from the result of the injury, but that he was injured by the negligence of the defendant. Negligence is the failure to do that which a reasonably prudent man would have done under the circumstances, or the omission to use means reasonably necessary to avoid or prevent injury to others. In this case, in order for the plaintiff to recover, you must also find that defendant is guilty of what the law classes actionable negligence—that is, negligence which entitles the plaintiff to recover in court; and to establish actionable negligence, the plaintiff is required to show by the greater weight of the evidence that there was failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff under the circumstances in which they were placed; proper care being that degree of care which a prudent man would exercise under like circumstances and charged with a like duty. You will also have to find by the greater weight of the evidence that such negligent breach of duty was the proximate cause, or one of the contributing proximate causes of the injury which resulted in the death of plaintiff's intestate—that is, the cause which produced the result in continuous sequence, and without which it would not have occurred, and one from which a man of ordinary prudence would have foreseen that some such result was probable under all the facts as they existed. You not only have to find that the injury was the result of negligence upon the part of the defendant, but you have to go further and find that that negligence was the proximate cause or one of the proximate causes of plaintiff's intestate's death. In a case of this character there may be one proximate cause of the injury, or there may be more than one. There may be an indefinite number of causes which resulted in the death which are proximate causes, and it is for you to say, when you come to this question, whether or not you find that the defendant was guilty of negligence in occasioning this injury, and if such negligence was the proximate cause or any one of the contributing proximate causes of his death. Proximate cause is that which, in natural and continuous sequence, unbroken by any new and independent cause, produces the event, and without which the event would not have occurred. That is the legal definition of proximate cause." We think the charge, under the facts and circumstances of the case, is in accord with the decisions of this Court. *Drum v. Miller*, 135 N. C., 215; *Ramsbottom v. R. R.*, *supra*; *Fisher v. New Bern*, 140 N. C., 512; *Harton v. Telephone Co.*, 141 N. C., 455; *Ward v. R. R.*, 161 N. C., 184; *Paul v. R. R.*, 170

N. C., 231; *Taylor v. Lumber Co., supra,* 116-117; *Lea v. Utilities Co.,* 175 N. C., 464; *Stultz v. Thomas,* 182 N. C., 473; 29 Cyc., pp. 415-488.

The plaintiff contends in his argument that "The defendant admits in its answer that a coemployee of Hinnant was talking to him and distracting his attention from the garbage car. This is admitted in the pleadings, and being so established, if found to be one of the contributing proximate causes, liability follows. We say, as a matter of law, this fact being that the plaintiff was entitled to have the court instruct the jury, if they believed the evidence, to answer the first issue 'Yes.'"

On the other hand, the defendant contends: "The defense was founded chiefly on the proposition that, even though the defendant might have been guilty of negligence, in that its employee, Mr. Allen, had the baggage car on the trestle, which negligence was and is denied, the intestate of the plaintiff was guilty of the only proximate negligence, in that, in violation of the plain rules of the company, he went out of a double track, where he was perfectly safe, at Wrightsville Station, on the mainland, on a bright morning in August, at about 6 o'clock, when there was nothing to obscure his vision, and ran into the baggage car, which, according to defendant's testimony, had stopped, and, before and after stopping, had been given sharp warnings to attract Hinnant's attention, which for some unknown reason could not be done, though he was neither deaf nor blind."

In the second position taken in its brief the defendant, to sustain this contention, assigns as error the following charge given by the court below—given at the request of plaintiff (twenty-fourth assignment of error), and the refusal to give instructions prayed for by defendant (twenty-sixth and twenty-seventh assignments of error). The charge given at the request of plaintiff is as follows: "If the jury should find from the evidence, by its greater weight, that the train or cars upon which the deceased was motorman was given or had the right of way over the track at the time of the collision, and that the defendant ran, or caused to be run, one of its cars out upon the track in front of the train upon which plaintiff's intestate was motorman, and at a time when the plaintiff's intestate's train, upon which he was motorman, had such right of way, and that such fact was one of the contributing proximate causes of the plaintiff's intestate's being killed, then the jury should answer the first issue 'Yes,' even though they should find from the evidence that had the plaintiff's intestate, had he kept a proper lookout and performed his duty, he could have stopped his train and prevented the collision; for if the train upon which the plaintiff's intestate was motorman had the right of way over the track, and if the defendant company, after giving said train the right of way over the track, ran or permitted a car to be out on the track, in the way of

plaintiff's intestate's train, and kept it there until the collision occurred, resulting in the death of the plaintiff's intestate, such would be an act of negligence on the part of the defendant, and if proximate cause of the injury, and you find so by the greater weight of the evidence, then the jury would answer the first issue 'Yes.' "

The instructions prayed for by defendant, and refused, are as follows: "Even though the jury should find from the evidence and the greater weight thereof—the burden of proof being upon the plaintiff to satisfy you—that the company was negligent in any respect in Allen's baggage car being on the trestle, yet it was the motorman's—that was Hinnant's—duty not to go out of the double track onto the single track, in face of the approaching baggage car, which he saw, or by using proper care, should have seen; and if you find by the evidence and its greater weight that Hinnant did see the approaching car, by the exercise of reasonable care, would have seen it in time not to go out of the double track onto the single track on the trestle, or to stop his car after he had gone out on the single track in time to avoid the collision, you will answer the first issue 'No.' "

The position taken by the defendant is that the plaintiff's intestate was guilty of negligence, which was the *only and sole proximate cause of the injury,* and that the jury should have answered the first issue "No."

The argument and reasoning has much to commend itself, but is not applicable in a case like the instant one. We have a statute in this State that applies to cases of this kind—common carrier by railroad. A part of C. S., 3467, *supra,* says: "The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee," etc. With that statute in force in this State, plaintiff's intestate went out of the double track onto the single track on the trestle, and by keeping a proper lookout could have stopped his train and prevented the collision. This would make him guilty of contributory negligence, yet if his train had the right of way over the track, and defendant blocked it with the garbage train, and this was the proximate cause or one of the contributing proximate causes of the injury, and continuing up to the time of the collision, and the jury so find, the defendant would be guilty of negligence, and the jury should answer the issue "Yes."

The principle of *Davies v. Mann,* 12 M. & W., 546, and that line of cases cited by defendant's counsel, cannot be applied to this case. The common law as to "common carriers" has been changed by statute. Our statute is similar in many respects to the Federal Employers' Liability Act. In the argument on the passage of this act, Senator Smith, of

Michigan, said: "It suggests the very anomalous situation that a passenger pays his fare, and if he contributes to his own injury he cannot recover, while two employees paid to conduct him safely may by their negligence cause an accident and kill many persons, and yet they can recover." 60 Cong. Record (first session), p. 4435.

The present right of recovery is well stated by Thornton in his book on "The Employers' Liability and Safety Appliance Acts," sec. 28: "A careful reading of this section (Federal Employers' Liability Act) will show that contributory negligence is no longer a complete defense, as it was at the common law, but is still a partial defense. As a complete defense, all the rules of the common law are erased at one sweep of the legislative pen; and, although an employee is guilty of contributory negligence, he may still recover. But those rules are still in force for the purpose of determining the *quantum* of damages the employee may recover; for whatever at common law was contributory negligence is still to be considered in determining the relative amount of the employee's negligence, as compared with that of the employer." Note 4 is as follows: "The statute 'permits a recovery by an employee for an injury caused by the negligence of a coemployee; nor is such a recovery barred, even though the injured one contributed by his own negligence to his injury. The amount of the recovery, however, is diminished in the same degree that the negligence of the injured one contributed to the injury. It makes each party responsible for his own negligence, and requires each to bear the burden thereof.' 60 Cong. Rec. (first session), p. 4434."

The case of *Frese v. Chicago, B. & Q. R. R. Co.,* in U. S. Supreme Court, decided 15 October, 1923, is not applicable to the case at bar. This was a collision of a railroad train approaching a crossing with another railroad upon the same level. Frese was an engineer in charge of the engine of the defendant, Chicago, Burlington and Quincy Railroad Company. His train had a collision with the train of the Wabash Railroad Company at a grade crossing. The collision was in Illinois. The statute of Illinois requires a train approaching a crossing with another to come to a full stop 800 feet from the crossing. Frese stopped his train about 200 feet and the Wabash train about 300 feet from the crossing. The statute further provides: "The engineer or other person in charge of the engine attached to the train shall positively ascertain that the way is clear and that the train can safely resume its course before proceeding to pass the (bridge) or crossing." *Mr. Justice Holmes* said: "Moreover, the statute makes it the personal duty of the engineer positively to ascertain that the train can safely resume its course. Whatever may have been the practice, he could not escape this duty, and it would be a perversion of the Employers' Liability Act to hold that he

could recover for an injury primarily due to his failure to act as required, on the ground that possibly ,the injury might have been prevented if his subordinate had done more." In the *Frese case* the deceased was killed, and the injury was not by a train on the Chicago, Burlington and Quincy Railroad Company, by whom he was employed, but he was killed by a train on the Wabash road. The negligence of the Wabash road was not the negligence of a coemployee of deceased. There was no sufficient evidence of negligence shown on the part of the fireman and coemployee of Frese for the jury to consider.

In the instant case there was sufficient evidence of negligence on the part of defendant to be submitted to the jury under our statute. The Illinois statute says the engineer "shall positively ascertain that the way is clear."

The act of defendant in blocking its track was one of continuing negligence when coupled with the continuing order from the company to proceed over the track, and when it failed to advise him, which it might have done while at Wrightsville Station, that the track was blocked, and in not revoking the existing order allowing plaintiff's intestate a superior right of way over the track, it was negligent. There was evidence to go to the jury on this phase of the case.

It has been frequently held in this State that there can be more than one contributing proximate cause. "Where two efficient proximate causes contribute to an injury, if defendant's negligent act brought about one of such causes, he is liable." *White v. Realty Co.,* 182 N. C., 538, and cases cited.

It was in evidence—the weight was for the jury—that the act of defendant in blocking the track with another train, and in requiring its employee to operate them in violation of its own rules, and a coemployee was distracting Hinnant's attention from his duties, and in failing to give adequate and efficient meeting points, and Allen's failure to reverse his car, were each of them acts of negligence tending to show the company's liability, at least under our statutory Employers' Liability Act. *Greenlee v. R. R.,* 122 N. C., 977; *Fleming v. R. R.,* 131 N. C., 476; *Walker v. R. R.,* 135 N. C., 738; *Smith v. Electric R. R.,* 173 N. C., 489; *Hines v. Lumber Co.,* 174 N. C., 294.

In 18 R. C. L., p. 670, it is said:

"163. *Disobedience of Rules of Company.* In order to protect the life and property of the public, as well as for the protection of employees, it is highly important that those who engage in railroad service should observe the rules and regulations of the company, and the courts have considered it politic to deny to an employee the right to recover for personal injuries to which his disobedience of a reasonable rule or regulation of the company appears to have contributed. To be binding,

however, rules must have been properly promulgated; *and of course they must have been applicable to the facts of the particular case, and not abrogated or revoked by other inconsistent rules or orders.*" (Italics ours.) *Mason v. R. R.,* 111 N. C., 482; *Haynes v. R. R.,* 143 N. C., 154; *Tisdale v. Tanning Co.,* 185 N. C., 501; *Belshe v. R. R.,* 186 N. C., 246.

The jury found on the second issue that the plaintiff's intestate was guilty of contributory negligence. On the issue as to the measure of damages the court below took this in consideration and in the charge to the jury on this issue followed the rule laid down in *Ward v. R. R.,* 161 N. C., 186.

The evidence for plaintiff and defendant was conflicting. The case was tried out, in accordance with the allegations and contentions in the statement of this case, before set out. Reciting the rules of the company, which each side relied on, and the evidence, would only make a lengthier record. We have examined the assignments of error carefully, and can find no prejudicial or reversible error.

No error.

STACY, J., took no part in the consideration or decision of this case.